LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant (appellant) guilty under an indictment charging her with the murder of “Jessie Burl Johnson, by shooting him with a gun, in violation of § 13A-6-2 of the Code of Alabama.” The court fixed her punishment at imprisonment for twenty-five years and sentenced her accordingly.
According to the testimony of defendant, the victim was her husband to whom she had been married about two years and with whom she had lived for approximately three years before they were married. She was the mother by a previous marriage of two children, who were living with her and the alleged victim at the time of his death, and who were present at the home of the couple in Brierfield, Alabama, when the victim was killed by one bullet shot from a pistol that entered the back of his head. The couple were father and mother of a baby who apparently was elsewhere at the time of the tragedy.
According to further testimony of defendant, on the night of February 1, 1980, the defendant fixed dinner for her children and her husband; the dinner did not meet her husband’s approval, and he knocked her to the floor and “stomped” her. She fixed him another plate, which he ate and left. Upon his return, he began to smoke marijuana as he had on other occasions and injected “white looking stuff” into his arm with a needle; he hit her on the side of the head with his fist, knocked her down and kicked her with his steel-toed work boots. He then went and obtained his pistol and loaded it, told defendant he was going to shoot her in the back of the head and kill both of the children. He put the pistol to the back of her head and said, “I just want you to feel the tip of this gun, but the bullet is going to feel a lot worse.” He then placed the gun on the piano nearby, sat down and began to roll marijuana cigarettes and to describe how he was going to kill her and her children. When he turned away from defendant, she seized the gun, and shot her husband in the back of the head. Expert testimony showed that the one shot was fatal.
Defendant further testified that she attempted to move the body of her husband out of the house to the automobile in front of the house. She succeeded in getting it almost to the automobile, left it there, went back in the house, drank beer to a state of intoxication and did not report the incident.
Robin and Richard King, the children, testified on call of the State. They did not see any of the trouble between the defendant and her husband on the night of his death, but they heard noise coming from the bedroom of the other two. Rickey said he heard sounds of furniture moving, his stepfather cursing and a gunshot. He said that some time thereafter his mother woke him up, that she at that time had the pistol in her hand and shot it into the floor one time, that he then took the pistol outside and shot it one time and then came back into the house and put the gun “on safety and put it up.” While on the outside, he saw his stepfather on the ground but “assumed he was drunk” and returned to the house and went to sleep. He further testified:
“A. Well, it was real early that morning — about 5, but it was dark outside.
“Q. After you went to sleep, did you— did anybody ever wake you up later on?
“A. I got up by myself.
“Q. Okay. What did you do?
“A. I went outside. I was going to make a fire and he was still there.
“Q. Who was still there?
*1113 “A. Jessie. I told my mama and she said she was going to get one of the neighbors to help pick him up and bring him in the house.”
According to the testimony of David Boll-ing, a witness for the State, he was a neighbor of the Johnsons and on the morning of February 2,1980, the defendant came to his house and asked for his help, stating that her son had gone out into the yard and “found her husband laying out there” and saying also that “he left that night” and she “thought he went off with somebody else.” The witness then went to his daughter’s house and “called the rescue squad.”
There was further evidence that the rescue squad and law enforcement authorities arrived soon after the rescue squad was called, that Jessie Johnson had been dead for some time, his body removed from the yard, and an autopsy was duly performed.
No contention is made on appeal to the effect that the verdict was not supported by the evidence. We have summarized enough of it to show that no such contention can reasonably be made, in our opinion.
We must reject appellant’s contentions I and II, wherein she challenges as violative of her constitutional right to security against unreasonable search and seizure the admission in evidence of various items, including the pistol with which defendant killed her husband, two empty .32 caliber cartridges and a .32 caliber bullet in the floor of the house and samples of blood that were in the home, taken by law enforcement officers as they entered the home after seeing the dead body in the yard and following the trail of blood onto the porch. Retowsky v. State, Ala.Cr.App., 333 So.2d 193, 199-200 (1976); Pope v. State, Ala.Cr.App., 367 So.2d 998, 1001 (1979). It was obvious to them that Jessie Johnson had been killed in his own home, and it then became the duty, as well as the right, of the officers to enter the house and investigate further. The fruits of that investigation, including the items named and photographs of the inside of the house, were properly admitted in evidence. The officers then had probable cause for believing that defendant had unlawfully killed her husband and their arrest of her without a warrant was fully justified.
Appellant’s further contention that defendant’s “inculpatory statements were obtained in violation” of her constitutional rights and “should not have been admitted into evidence” is not supported by the transcript. On the contrary, the evidence shows that the statements were intelligently, voluntarily and understandingly made and that the officers in taking her statements comprehensively advised her of all of her pertinent constitutional rights, including the right to an attorney at the expense of the State, and warned her fully as to the consequences of her making the statements. In each statement she acknowledged in writing that her “rights” had been read to her and that “no threats or promises” had been made to her to get her to make the statements. The statements were properly admitted in evidence.
Appellant’s final contention is that the court was in error in admitting in evidence four photographs of the body, or parts of the body, of the deceased. The photographs are thus described in appellant’s brief:
“State’s Exhibit # 18 was a photograph of the body at the autopsy; State’s Exhibit # 17 was the photograph of the head wound; State’s Exhibit # 16 was a photograph of the head of the victim immediately prior to the autopsy; State’s Exhibit # 15 was a photograph of the bullet after a section of the skull of the deceased had been removed but before the bullet had been extracted.”
Appellant characterizes the photographs as constituting “a gruesome window-dressing at trial, having no probative value.” We disagree. None of the photographs, except State’s Exhibit # 15, appears to us to be gruesome. Even so, it had probative value and was properly admitted in evidence, even though there was strong evidence without it that the bullet seen in it caused the death of the alleged victim. We do not consider it “both morbid and super *1114 fluous” as characterized by appellant. No error was committed in admitting any of the four photographs in evidence. McKee v. State, 253 Ala. 235, 44 So.2d 781 (1950); Powell v. State, 40 Ala.App. 148, 109 So.2d 525 (1959); Braswell v. State, Ala.Cr.App., 371 So.2d 992 (1979). The record is free of error prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.