Certiorari was granted in this case to consider (1) the conclusion of the Court of Criminal Appeals that the warrantless search of this defendant's residence was executed under exigent circumstances; and (2) that court's conclusion that six cartridges taken from the body of the victim were admissible. As to the first issue, as discussed hereinafter, we remand the case to the Court of Criminal Appeals for further consideration. As to the second issue, we find the result reached by the Court of Criminal Appeals to be correct.
Although the facts pertinent to the search and seizure issue appear in the opinion of the Court of Criminal Appeals, they are reproduced here as an aid to understanding our conclusions:
 "On May 12, 1983, at approximately 8:04 P.M., in Sylacauga, Alabama, the defendant, Margie Lee Usrey, called a neighbor, Jeannie Davis and stated to her that she had shot her husband, Jerry Usrey. Miss Davis summoned her roommate, Mary Hosey, and the two went to the Usrey residence, which was located some seventy-five feet away. When they arrived they discovered the body of Jerry Usrey in a bedroom of the Usrey trailer, whereupon Jeannie Davis called the Sylacauga Police.
 "Officer Marty Batson of the Sylacauga Police Department was dispatched to the scene in response to Miss Davis' call. One of the women other than the defendant met Officer Batson at the door of the residence and advised him that there had been a shooting inside and that, in her opinion, the subject was deceased. After being advised of this, Officer Batson entered the premises without obtaining either a warrant or the consent of Mrs. Usrey. Upon entering the trailer, Officer Batson secured the scene. Officer Batson testified that after securing the scene he was no longer under any fear or apprehension that some unidentified person might be loose in the trailer. Upon securing the scene, Officer Batson called his station, reported the homicide, and requested the detective division, a photographer, and the chief. During the next four hours Officer Batson and others participated in a warrantless search which involved opening closets and chests of drawers, and looking under clothing and beds. During the search evidence was seized and photographs were taken of the interior of the trailer and its contents. The body of the deceased was transported to Cooper Green Hospital in Birmingham, Alabama, where Dr. Joseph Embry performed an autopsy upon the body on May 13, 1983. During the course of the autopsy Dr. Embry recovered six projectiles from the body of the deceased. The only warrant obtained by police in this case was issued on May 16, 1983, *Page 734 
three days after the autopsy and four days after the initial search of defendant's residence.
 "At trial the photographs taken in the search of defendant's residence and the projectiles removed from the body of the deceased were received into evidence over defendant's motion to suppress and over contemporaneous objection raising the issue of the constitutionality of the searches and seizures. Defendant was convicted of murder on May 27, 1984."
(Emphasis added.) Usrey v. State, 527 So.2d at 727
(Ala.Crim.App. 1986). These facts were conceded as "substantially correct" by the State.
In its initial opinion upon submission, the Court of Criminal Appeals referred to the following statement contained in the State's brief before that court:
 " 'Furthermore, the seizure of the evidence of this case was justified because the police officers were confronted with an exigent circumstance wherein the evidence might have been surreptitiously removed. The seizure and photographs were necessary to preserve the evidence. Roaden v. Kentucky, 413 U.S. 496
[93 S.Ct. 2796, 37 L.Ed.2d 757] (1973); Billingsley v. State, 402 So.2d 1052 (Ala.Crim.App. 1980), reversed on other grounds, 402 So.2d 1060 (1981); Love v. State, 377 So.2d 8 (Ala.Crim.App. 1979). Wherefore, the trial court was correct in allowing the photographs in evidence.' "
527 So.2d at 728. That court agreed with that conclusion, without citation of additional authority.
On rehearing, that court, considering this issue again, quoted from the petitioner's brief:
 " 'In holding that photographs taken during a four hour warrantless search of defendant's residence were admissible under an exigent circumstances exception to the requirements of a search warrant because items photographed could have been surreptitiously removed this Court completely overlooks the fact that, at the time the photographs were taken, the police had taken control of the premises and had established a 'crime scene.' According to the first officer on the scene, he posted an officer at the entrance of the residence to prohibit entry by anyone without his prior approval. (RT 291). Upon leaving the scene the back door was 'wired' shut and the front door was locked and sealed. (RT 440, 441). Clearly the police had control of the scene and surreptitious removal of evidence was capable of being prevented. Thus the 'exigent circumstance' relied upon by the State to justify this warrantless intrusion is not supported by the record. Therefore, this court's opinion in this regard is in error and is due to be reconsidered and amended.' "
527 So.2d at 730. In analyzing this argument, the Court of Criminal Appeals commented, again without citation of authority:
 "There would probably be some merit to this contention of counsel for appellant if the search complained of had occurred during the daylight, instead of soon after 8:04 P.M. on the night of May 12, 1983, at which time it would have almost certainly been very difficult for the officers to obtain a warrant to search the premises in time to execute the warrant and at the same time maintain security of the premises and thereby avoid unjustified entrance thereto and exit therefrom. We continue to hold as we did on original submission of this cause and decline to accept the issue and argument of counsel for appellant as a proper basis for granting the application for rehearing."
(Emphasis added.) 527 So.2d 730.
Thus, on rehearing, the Court of Criminal Appeals found an exigent circumstance in the great "difficult[y]" of the officers, found "almost certainly," to obtain a search warrant because the search itself occurred soon after 8:04 p.m., instead of during daylight (assuming there was a complete absence of daylight at that time on May 12, 1983). In reaching this decision, the Court of Criminal Appeals referred to no additional facts either supported by the record or argued by the State. *Page 735 
Nevertheless, that court, in reaching such a conclusion, apparently conceded that petitioner's argument concerning the search and seizure, and abandoned its original concurrence in the State's position to the effect that the exigent circumstance permitting the search lay in the protection of the evidence. Indeed, the facts as found by the Court of Criminal Appeals suggest that there was no risk of the evidence being removed or otherwise destroyed.
In its argument before this Court, the State now takes a position unlike its initial position. It now argues that the exigent circumstances permitting the questioned search and seizure lay in the danger that others might be harmed: "For all he [Officer Marty Batson] knew, someone could have been hurt and in need of medical attention." Contending that Officer Batson's entry was justified as having been made under exigent circumstances, the State argues that his discovery of all of the other evidence later taken and photographed was admissible under the "plain view" doctrine.
Of course, on certiorari this Court must review the case on the facts found by the lower court, and those facts are expressly conceded by the State in its brief. Under those facts, quoted hereinabove, Officer Batson, upon entering the trailer, secured the scene, and thereupon was under no fear or apprehension that some unidentified person was present in the trailer. Upon securing the scene, Officer Batson reported to his station, requested other officers, together with a photographer, and, subsequently, after the scene had been secured, participated in the search described above without benefit of a search warrant.
 I.
Commenting upon what it described as the "fundamental guarantee" of the Fourth Amendment (applicable to the states under the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643,81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)), the United States Supreme Court, in Coolidge v. New Hampshire, 403 U.S. 443,91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), quoted from Boyd v. United States,116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886):
 "It may be that it is the obnoxious thing in the mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."
It then referred to the "per se" rule of the Fourth Amendment applied by Katz v. United States, 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576 (1967); Jones v. United States, 357 U.S. 493,78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); and United States v.Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); andMcDonald v. United States, 335 U.S. 451, 69 S.Ct. 191,93 L.Ed. 153 (1948):
 "Thus, the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption * * * that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.' . . ."
(Emphasis added.) Coolidge, 403 U.S. at 454-55,91 S.Ct. at 2031-32.
In determining whether an exigent, i.e., urgent, circumstance exists in instances such as the one exhibited here, and specifically whether the mere inconvenience of time presented by early evening hours furnishes *Page 736 
such a circumstance, we look to a similar case decided by the United States Supreme Court.
Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408,57 L.Ed.2d 290 (1978), dealt with a search of a "murder scene." In that case, an undercover police officer and several other officers conducted a narcotics raid on the apartment of one Mincey. After all of the officers had entered the apartment, and while the undercover officer was in Mincey's bedroom, shooting occurred in the bedroom. The undercover officer was fatally shot. When the other officers entered the bedroom, they found Mincey himself wounded. After the shooting, the other officers looked for other victims and found a wounded young woman in the bedroom closet and three acquaintances of Mincey in the living room. These officers called for emergency assistance for the wounded persons, but conducted no additional investigation. Within ten minutes of their call, however, homicide detectives arrived at the apartment and oversaw the removal of the wounded, "trying to make sure that the scene was disturbed as little as possible, and then began to gather evidence."437 U.S. at 389, 98 S.Ct. at 2411. They conducted a warrantless search lasting four days, which included searching, photographing, and diagramming the apartment; opening drawers, closets, and cupboards; digging bullets from the walls; and making other examinations.
The State of Arizona attempted to justify the search on the basis that it was a search of a "homicide scene." The United States Supreme Court considered that argument in an exhaustive manner:
 "The State's second argument in support of its categorical exception to the warrant requirement is that a possible homicide presents an emergency situation demanding immediate action. We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. Cf. Michigan v. Tyler, . . ., 436 U.S. [499], at 509-510, 98 S.Ct. [1942], at 1950-51 [56 L.Ed.2d 486]. 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' Wayne v. United States, 115 U.S.App.D.C. 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.). And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. Michigan v. Tyler, supra, 436 U.S., at 509-510, 98 S.Ct., at 1950-1951; Coolidge v. New Hampshire, 403 U.S., at 465-466, 91 S.Ct., at 2037-2038.
 "But a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation,' Terry v. Ohio, 392 U.S. [1], at 25-26, 88 S.Ct. [1868], at 1882, [20 L.Ed.2d 889] and it simply cannot be contended that this search was justified by an emergency threatening life or limb. All the persons in Mincey's apartment had been located before the investigating homicide officers arrived there and began their search. And a four-day search that included opening dresser drawers and ripping up carpets can hardly be rationalized in terms of the legitimate concerns that justify an emergency search."
(Footnotes omitted.) (Emphasis added.) 437 U.S. at 392-93,98 S.Ct. at 2413.
Commenting further on the necessity of avowed exigent circumstances, the Court continued:
 "Third, the State points to the vital public interest in the prompt investigation of the extremely serious crime of murder. No one can doubt the importance of this goal. But the public interest in the investigation of other serious crimes is comparable. If the warrantless search of a homicide scene is reasonable, why not the warrantless search of the *Page 737 
scene of a rape, a robbery, or a burglary? 'No consideration relevant to the Fourth Amendment suggests any point of rational limitation' of such a doctrine. Chimel v. California, . . ., 395 U.S. [752], at 766, 89 S.Ct. [2034] at 2041 [23 L.Ed.2d 685].
 "Moreover, the mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment. Cf. Coolidge v. New Hampshire, . . ., [403 U.S.] at 481, 91 S.Ct. at 2045. The investigation of crime would always be simplified if warrants were unnecessary. But the Fourth Amendment reflects the view of those who wrote the Bill of Rights that the privacy of a person's home and property may not be totally sacrificed in the name of maximum simplicity in enforcement of the criminal law. See United States v. Chadwick, 433 U.S. 1, 6-11, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538. For this reason, warrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153, Johnson v. United States, 333 U.S. 10, 14-15, 68 S.Ct. 367, 369, 92 L.Ed. 436. See, e.g., Chimel v. California, supra
(search of arrested suspect and area within his control for weapons or evidence); Warden v. Hayden, 387 U.S. 294, 298-300, 87 S.Ct. 1642, [1645-1646] 18 L.Ed.2d 782 ('hot pursuit' of fleeing suspect); Schmerber v. California, 384 U.S. 757, 770-771, 86 S.Ct. 1826, 1835-1836, 16 L.Ed.2d 908 (imminent destruction of evidence); see also supra, at 392-393 [98 S.Ct. at 2413-14].
 "Except for the fact that the offense under investigation was a homicide, there were no exigent circumstances in this case, as, indeed the Arizona Supreme Court recognized. 115 Ariz., at 482, 566 P.2d, at 283. There was no indication that evidence would be lost, destroyed, or removed during the time required to obtain a search warrant. Indeed, the police guard at the apartment minimized that possibility. And there is no suggestion that a search warrant could not easily and conveniently have been obtained. We decline to hold that the seriousness of the offense under investigation itself creates exigent circumstances of the kind that under the Fourth Amendment justify a warrantless search."
(Emphasis added.) 437 U.S. 393-94, 98 S.Ct. at 2413-14.
Since its decision in Mincey, the United States Supreme Court has decided Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct 409,83 L.Ed.2d 246 (1984), a case which the Supreme Court found to be in direct conflict with the requirements of Mincey, and which is remarkably similar on its facts to the present case. Because of the factual similarity of these two cases, we quote that portion of the Supreme Court's opinion setting forth the facts:
 "The Louisiana Supreme Court states the facts as follows:
 " 'On May 18, 1982, several deputies from the Jefferson Parish Sheriff's Department arrived at [petitioner's] home in response to a report by the [petitioner's] daughter of a homicide. The deputies entered the house, made a cursory search and discovered [petitioner's] husband dead of a gunshot wound in a bedroom and the [petitioner] lying unconscious in another bedroom due to an apparent drug overdose. According to the [petitioner's] daughter, the [petitioner] had shot her husband, then ingested a quantity of pills in a suicide attempt, and then, changing her mind, called her daughter, informed her of the situation and requested help. The daughter then contacted the police. Upon their arrival, the daughter admitted them into the house and directed them to the rooms containing the [petitioner] and the victim. The deputies immediately transported the then unconscious [petitioner] to a hospital and secured the scene. Thirty-five minutes later two members of the homicide unit of the Jefferson Parish Sheriff's Office *Page 738 
arrived and conducted a follow-up investigation of the homicide and attempted suicide.
 " 'The homicide investigators entered the residence and commenced what they described at the motion to suppress hearing as a "general exploratory search for evidence of a crime." During their search, which lasted approximately two hours, the detectives examined each room of the house.' State v. Thompson, 448 So.2d 666, 668
(La. 1984).
 "Petitioner was subsequently indicted for the second degree murder of her husband. She moved to suppress three items of evidence discovered during the search, including a pistol found inside a chest of drawers in the same room as the deceased's body, a torn up note found in a wastepaper basket in an adjoining bathroom, and another letter (alleged to be a suicide note) found folded up inside an envelope containing a Christmas card on the top of a chest of drawers. All of this evidence was found in the 'general exploratory search for evidence' conducted by two homicide investigators who arrived at the scene approximately 35 minutes after petitioner was sent to the hospital. See ibid. By the time those investigators arrived, the officers who originally arrived at the scene had already searched the premises for other victims or suspects. See Mincey,. . ., 437 U.S. at 392, 98 S.Ct., at 2413."
Thompson, 469 U.S. at 19, 105 S.Ct. at 410.
After setting forth the general Fourth Amendment principles enunciated by that Court in such cases as Katz v. UnitedStates, supra, the Supreme Court noted that it has "consistently reaffirmed [its] understanding that in all cases outside the exceptions to the warrant requirement the Fourth Amendment requires the interposition of a neutral and detached magistrate between the police and the 'persons, houses, papers and effects' of the citizens." 469 U.S. at 20,105 S.Ct. at 411. The Court went on to hold that the exigent circumstances present in that case (i.e., assisting petitioner to the hospital and conducting the initial "victim-suspect" search) would have justified only the seizure of evidence in plainview. Because the Court's analysis is apropos to this case, it is set out at length below:
 "Although the homicide investigators in this case may well have had probable cause to search the premises, it is undisputed that they did not obtain a warrant. Therefore, for the search to be valid, it must fall within one of the narrow and specifically delineated exceptions to the warrant requirement. In Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), we unanimously rejected the contention that one of the exceptions to the warrant clause is a 'murder scene exception.' Although we noted that police may make warrantless entries on premises where 'they reasonably believe that a person within is in need of immediate aid,' id., at 392, 98 S.Ct., at 2413, and that 'they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises,' ibid., we held that 'the "murder scene exception" . . . is inconsistent with the Fourth and Fourteenth Amendments — that the warrantless search of Mincey's apartment was not constitutionally permissible simply because a homicide had recently occurred there.' Id., at 395, 98 S.Ct., at 2414. Mincey is squarely on point in the instant case.
 "The Louisiana Supreme Court attempted to distinguish Mincey in several ways. The court noted that Mincey involved a four-day search of the premises, while the search in this case took only two hours and was conducted on the same day as the murder. See State v. Thompson, [448 So.2d] at 671. Although we agree that the scope of the intrusion was certainly greater in Mincey than here, nothing in Mincey turned on the length of time taken in the search or the date on which it was conducted. A two-hour general search remains a significant intrusion on petitioner's privacy and therefore may only be conducted subject to the constraints *Page 739 — including the warrant requirement — of the Fourth Amendment.
 "The Louisiana Court also believed that petitioner had a 'diminished' expectation of privacy in her home, thus validating a search that otherwise would have been unconstitutional. Ibid. The court noted that petitioner telephoned her daughter to request assistance. The daughter then called the police and let them in to the residence. These facts, according to the court, demonstrated a diminished expectation of privacy in petitioner's dwelling and therefore legitimated the warrantless search.
 "Petitioner's attempt to get medical assistance does not evidence a diminished expectation of privacy on her part. To be sure, this action would have justified the authorities in seizing evidence under the plain view doctrine while they were in petitioner's house to offer her assistance. In addition, the same doctrine may justify seizure of evidence obtained in the limited 'victim-or-suspect' search discussed in Mincey. However, the evidence at issue here was not discovered in plain view while the police were assisting petitioner to the hospital, nor was it discovered during the 'victim-or-suspect' search that had been completed by the time the homicide investigators arrived. Petitioner's call for help can hardly be seen as an invitation to the general public that would have converted her home into the sort of public place for which no warrant to search would be necessary. Therefore, the Louisiana Supreme Court's diminished expectation of privacy argument fails to distinguish this case from Mincey."
(Footnotes omitted.) (Emphasis added.) 469 U.S. at 20-22,105 S.Ct. at 411-12.
Just as in Thompson v. Louisiana, supra, the officer in this case who first arrived on the scene, Officer Batson, had already "secured the scene" before the other officers, investigators, photographers, etc., arrived a short time later. In Thompson, two members of a homicide unit conducted a two-hour general exploratory search of the entire house looking for evidence of the crime, during which three items of evidence were taken that obviously were not in plain view. In the present case, several officers conducted a four-hour search of the premises "which involved opening closets and chests of drawers, and looking under clothes and beds." Usrey v. State,supra, 527 So.2d at 727. During this search, evidence was seized and photographs taken of the interior of the premises. In its statement of the facts, however, the Court of Criminal Appeals does not describe the evidence seized, nor does it describe specifically the subjects of the photographs. Furthermore, even though the State argued in its brief to the Court of Criminal Appeals that "[t]he evidence objected to was in plain view when the police officers arrived at the Usrey residence to investigate the shooting," that court does not give any explanation whatsoever as to whether the State proved at trial that the evidence seized or photographed, and admitted over defendant's objection, was found in plain view. Under the decision of the Court of Criminal Appeals in Teat v. State,409 So.2d 940 (Ala.Crim.App. 1981), there must be evidence in therecord that the evidence seized, literally or by a photograph, was in plain view.
The court notes that in this case "photographs were taken of the interior of the trailer and its contents." Usrey v. State,supra. Under the prevailing view, if the photographs admitted at trial depicted only items or scenes within the plain view of the officers, then the taking of the photographs did not constitute a search. "The camera simply recorded what the officers saw" in plain view. State v. Dickerson,313 N.W.2d 526, 532 (Iowa 1981); State v. Anderson, 42 Or. App. 29,599 P.2d 1225 (1979). See also cases discussed at Annot., 27 A.L.R.4th 533, 533-37 (1984).
The foregoing analysis of Mincey, supra, and Thompson, supra, and the applicability of those cases to the present case, points up that the reasoning of the Court of Criminal Appeals on the validity of the search and seizure based on exigent circumstances, is clearly and unquestionably erroneous. We therefore find it necessary to remand this case to that court with *Page 740 
directions that it apply to the record in this case the United States Supreme Court cases and other cases which we have hereby held controlling of this Fourth Amendment issue.
 II.
Defendant also claims that the six cartridges removed from her husband's body during the course of an autopsy were inadmissible. She contends that, under Alabama law, as the deceased's surviving spouse, she had a possessory interest in his remains, citing Code of 1975, § 22-19-42, and Rehling v.Carr, 295 Ala. 366, 330 So.2d 423 (1976). She contends, in essence, that this possessory interest gave her standing to question the legality of the search of the body and the subsequent admission of evidence removed from the body during the autopsy. We hold that, notwithstanding what the defendant's possessory interest in the corpse of her deceased husband may have been, she had no legitimate expectation of privacy in the body of the deceased for Fourth Amendment purposes.
 "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Katz
posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable? See Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979)."
California v. Ciraolo, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811,90 L.Ed.2d 210, 213 (1986).
The Fourth Amendment does not protect the merely subjective expectations of privacy, but only those expectations that society is prepared to recognize as reasonable. Oliver v.United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214
(1984). If the defendant in this case expected that she could prevent the State from examining the body of her spouse, whose death was caused by the defendant, we conclude that her expectation was neither reasonable nor legitimate. See State v.Kelly, 697 S.W.2d 355 (Tenn.Crim.App. 1985). Under these facts, any property or possessory interest the defendant may have had in the remains of her husband does not also serve to cloak her with a reasonable expectation of privacy in those remains. We hold, therefore, that defendant's Fourth Amendment rights were not violated by the warrantless removal of the six cartridges from the body of her deceased husband and their subsequent admission into evidence at trial.
REMANDED WITH DIRECTIONS.
JONES, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
TORBERT, C.J., and MADDOX, J., concur in the result.