On February 21, 2002, Roland Edwin Harris was convicted of the murder of Jonathon Davis, a violation of § 13A-6-2, Ala. Code 1975. The trial court sentenced Harris to 20 years' imprisonment and ordered him to pay $100 to the Crime Victims' Compensation Fund.
On August 20, 2000, a passerby found Davis's body lying in some bushes. Davis had been shot in the head. The passerby flagged down Officer Colletta Shepard, who was patrolling in the area. Officer Shepard followed the passerby to where Davis's body was lying. Officer Shepard then "called dispatch and told them to notify" the evidence technician, the sergeant on duty, additional officers, the lieutenant, and the emergency medical technician that a body had been discovered. Officer Shepard waited at the scene until several other officers arrived. Officer Shepard and three other officers[1] went to the house closest to where Davis's body was found; it was across the street from where the body was found and was shared by Harris and Davis. The officers saw what appeared to be blood on the front lawn and sidewalk in front of the house and on the stairway and front porch of the house. It also appeared that the body had been dragged across the front lawn. Officer Shepard knocked on the door; when no one answered, she and the three other officers entered the house.[2] The officers went through all of the other rooms in the house before they found Harris in a bedroom, asleep on the bed, with a rifle propped next to the bed. There was also a .38-caliber Smith Wesson Special revolver on top of a cooler in the bedroom; the revolver had four live rounds and one spent round in it.
Officer Shepard took Harris outside and placed him in the back of a police car. A neighbor told the officers that Harris and Davis had had an argument. Officer Shepard placed Harris under arrest. Police officers, including an evidence technician, then reentered the house, searched it, and seized evidence.
Harris moved to suppress the evidence seized as a result of the warrantless search of his house and to suppress statements he made to police officers after they arrested him. The trial court denied Harris's motions. A jury found Harris guilty of murder. Harris appealed his conviction. The Court of Criminal Appeals affirmed Harris's conviction, without an opinion (No. CR-01-1782, Jan. 24, 2003) 876 So.2d 1187 (Ala.Crim.App. 2003) (table), and subsequently *Page 877 
overruled his application for a rehearing. On March 7, 2003, Harris petitioned this Court for certiorari review. On preliminary examination, we granted the writ of certiorari to consider whether the trial court erred in not suppressing the evidence seized during the warrantless search of Harris's house.
 I.
The only issue before this Court is whether the Court of Criminal Appeals erred in holding that the trial court properly denied Harris's motion to suppress the evidence obtained during the warrantless search of his house. We conclude that any error by the trial court in admitting the evidence seized during the warrantless search of Harris's house was harmless error underChapman v. California, 386 U.S. 18, 87 S.Ct. 824,17 L.Ed.2d 705 (1967).[3]
 II.
Harris argues that the trial court should have suppressed all of the evidence seized during the warrantless search of his house and that that evidence was improperly admitted into evidence at trial. That evidence includes a revolver, a shotgun, articles of bloodstained clothing, alcoholic-beverage containers, a towel, and a carpet sample.
However, even had these items not been admitted into evidence, the State's case against Harris was compelling. During the State's case-in-chief, Officer Shepard testified that Davis's body was found in some bushes across the street from the house Harris and Davis had shared. A trail of blood and indentations in the grass in the front yard of the house indicated that Davis's body had been dragged from the house. Officer Shepard testified that there was a large pool of blood on the front porch of the house. She testified that she also found a pool of blood in the living room. She testified that Harris was found sleeping in one of the bedrooms in the house.
Curtis Rowel, another State's witness, testified that on the night of the shooting, he was sitting on the front porch of Davis and Harris's house. Rowel claimed that he would often "hang out" on the porch with Davis and Harris. Rowel stated that he heard Davis and Harris arguing inside the house. Rowel said that he heard a gunshot inside the house, looked in the window, and saw someone lying on the floor. Rowel immediately fled.
Deanna Kelly, a friend of Davis's and Harris's, testified that she arrived at the house late on the evening of the shooting. When she arrived, she saw Davis's body lying faceup on the front porch in a puddle *Page 878 
of blood. She testified that she went into the house and that there was blood on the carpet in the living room. Kelly stated that she called out to Harris and that he came into the room and admitted that he had shot Davis.
Michael Mobley, Kelly's boyfriend, testified that he arrived at Harris's house after Kelly. He saw Davis's body lying on the front porch in a pool of blood. Mobley explained that he became upset and asked Harris what had happened. Mobley testified that Harris stated to him: "I shot him, man."
Dr. Gregory G. Davis, a forensic pathologist who performed an autopsy on Davis's body, testified that Davis died of a gunshot wound to the head. He further stated that a medium-caliber projectile was found lodged inside Davis's skull. Ed Moran, the section chief of the firearms and toolmarks identification unit of the Alabama Department of Forensic Sciences, testified that this projectile was a .38-caliber bullet.
Harris called only one witness in his defense, David Turner. Turner testified that he was in the house the night Davis was killed and that Davis and Harris were arguing. Turner testified that when he arrived at the house Davis appeared to be "drunk and high." According to Turner, Davis was very upset with Harris that evening. Turner said that Davis took a shotgun, pointed it at Harris, and said that he could have blown Harris's head off. Turner testified that Davis then began to back up and that Harris pulled a handgun from under a piece of a flannel shirt he was holding and shot Davis. Turner then fled the house, wiping his fingerprints from the door as he left.
The admission of the evidence seized during the warrantless search of Harris's house was clearly harmless error underChapman v. California, supra. In Chapman, the Supreme Court of the United States noted that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Chapman, 386 U.S. at 22,87 S.Ct. 824. "The erroneous admission of evidence that is merely cumulative is harmless error." Dawson v. State, 675 So.2d 897,900 (Ala.Crim.App. 1995). Additionally, "`testimony that may be inadmissible may be rendered harmless by prior or subsequent lawful testimony to the same effect or from which the same facts can be inferred.'" Flynn v. State, 745 So.2d 295, 307
(Ala.Crim.App. 1999) (quoting White v. State, 650 So.2d 538,541 (Ala.Crim.App. 1994), overruled on other grounds,669 So.2d 239 (Ala.Crim.App. 1995)). See also Rule 45, Ala. R.App. P. ("No judgment may be reversed . . . on the ground of . . . the improper admission of evidence . . . unless . . . the error complained of has probably injuriously affected substantial rights of the parties.").
Rowel testified that Harris and the victim were arguing on the evening in question and that a shot was fired during the argument. Moreover, Kelly and Mobley were unequivocal in their testimony that Harris admitted to each of them that he shot Davis. Finally, Harris's only witness, Turner, testified that Harris shot Davis under circumstances implying that Harris was acting in self-defense.[4] Thus, from the properly admitted evidence, including the testimony of Harris's own witness, it is undisputed that Harris shot Davis.
The evidence Harris finds objectionable in this case was simply evidence of undisputed facts or was merely cumulative of other testimony. First, the photographs of the crime scene were cumulative of the *Page 879 
testimony of Officer Shepard and of Kelly, both of whom testified as to the condition of the interior of the house. Additionally, the admission into evidence of the firearms and Moran's testimony linking the revolver found in the house during the warrantless search to the bullet that killed Davis were cumulative, because the fact that Harris shot Davis was undisputed. Finally, the articles of bloodstained clothing, alcoholic-beverage containers, the towel, and the carpet sample were also cumulative; this evidence tended only to show the condition of the house, as to which Officer Shepard and Kelly both testified, and that drinking had occurred, which was also fully presented by other admissible testimony.
In Chapman, supra, the Supreme Court held "that before a federal constitutional error can be held harmless, the [reviewing] court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman, 386 U.S. at 24,87 S.Ct. 824. In United States v. Hasting, 461 U.S. 499, 509,103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), the Court stated: "[I]t is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations. . . ." In making such a determination, "[t]he question a reviewing court must ask is this: absent the [erroneously admitted evidence,] is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?"461 U.S. at 510-11, 103 S.Ct. 1974. Setting aside the evidence seized during the warrantless search of Harris's house, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty — the same verdict it did in fact return.
 III.
Because any error by the trial court in admitting the evidence seized during the warrantless search of Harris's house was harmless error, we affirm the Court of Criminal Appeals' judgment.
AFFIRMED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] Officer Shepard could not recall the names of the other three officers, but she testified that two officers and a sergeant entered the house with her.
[2] Harris testified that he opened the door for the police: "I saw them coming, so I just opened the door." However, Officer Shepard testified that she knocked on the door and that after no one answered she entered the house through the door, which was unlocked.
[3] We decline to reach the question whether the warrantless entry and the search by the police officers were justified by exigent circumstances. See Mincey v. Arizona, 437 U.S. 385,390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (rejecting a "murder scene exception" created by the Supreme Court of Arizona to the requirement of obtaining a warrant). See also Thompson v.Louisiana, 469 U.S. 17, 22, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984) (applying Mincey); Ex parte Usrey, 527 So.2d 732 (Ala. 1987) (holding that once the scene was secure, exigent circumstances no longer existed and the police were required to obtain a search warrant); A.A.G. v. State, 668 So.2d 122, 128 (Ala.Crim.App. 1995) (holding that the police "may conduct a warrantless search if they believe that their own lives or the lives of others are at risk"); Johnson v. State, 402 So.2d 1111, 1113
(Ala.Crim.App. 1981) ("It was obvious . . . that Jessie Johnson had been killed in his own home, and it then became the duty, as well as the right, of the officers to enter the house and investigate further. The fruits of that investigation, including the items named and photographs of the inside of the house, were properly admitted in evidence."). See generally State v.Coulter, 67 S.W.3d 3 (Tenn.Crim.App. 2001) (discussing warrantless searches in emergency situations).
[4] In its oral charge, the trial court instructed the jury on the doctrine of self-defense.