# THOMPSON *v.* LOUISIANA

No. 83–6775.   Decided November 26, 1984

18

PER CURIAM.

In this case, the Louisiana Supreme Court upheld the validity of a warrantless "murder scene" search of petitioner's home. Because this holding is in direct conflict with our opinion in *Mincey* v. *Arizona*, 437 U. S. 385 (1978), we reverse.

I

The Louisiana Supreme Court states the facts as follows:

"On May 18, 1982, several deputies from the Jefferson Parish Sheriff's Department arrived at [petitioner's] home in response to a report by the [petitioner's] daughter of a homicide. The deputies entered the house, made a cursory search and discovered [petitioner's] husband dead of a gunshot wound in a bedroom and the [petitioner] lying unconscious in another bedroom due to an apparent drug overdose. According to the [petitioner's] daughter, the [petitioner] had shot her husband, then ingested a quantity of pills in a suicide attempt, and then, changing her mind, called her daughter, informed her of the situation and requested help. The daughter then contacted the police. Upon their arrival, the daughter admitted them into the house and directed them to the rooms containing the [petitioner] and the victim. The deputies immediately transported the then unconscious [petitioner] to a hospital and secured the scene. Thirty-five minutes later two members of the homicide unit of the Jefferson Parish Sheriff's Office arrived and conducted a follow-up investigation of the homicide and attempted suicide.

"The homicide investigators entered the residence and commenced what they described at the motion to suppress hearing as a 'general exploratory search for evidence of a crime.' During their search, which lasted

approximately two hours, the detectives examined each room of the house." 448 So. 2d 666, 668 (1984).

Petitioner was subsequently indicted for the second-degree murder of her husband. She moved to suppress three items of evidence discovered during the search, including a pistol found inside a chest of drawers in the same room as the deceased's body, a torn up note found in a wastepaper basket in an adjoining bathroom, and another letter (alleged to be a suicide note) found folded up inside an envelope containing a Christmas card on the top of a chest of drawers. All of this evidence was found in the "general exploratory search for evidence" conducted by two homicide investigators who arrived at the scene approximately 35 minutes after petitioner was sent to the hospital. See *ibid.* By the time those investigators arrived, the officers who originally arrived at the scene had already searched the premises for other victims or suspects. See *Mincey, supra,* at 392. The investigators testified that they had time to secure a warrant before commencing the search, see 448 So. 2d, at 668, and that no one had given consent to the search, see App. C to Pet. for Cert. 7–8, 16, 19–20 (transcript of testimony of Detectives Zinna and Masson at suppression hearing).

The trial court originally denied petitioner's motion to suppress. However, the trial court then granted petitioner's motion for reconsideration and partially reversed its former decision, holding that the gun and the suicide letter found in the Christmas card were obtained in violation of the Fourth Amendment and therefore must be suppressed. The Louisiana Court of Appeal denied the State's application for a writ of review. A sharply divided Louisiana Supreme Court subsequently held all of the evidence seized to be admissible.

## II

As we stated in *United States* v. *Chadwick,* 433 U. S. 1, 9 (1977), "in this area we do not write on a clean slate." In a long line of cases, this Court has stressed that "searches

conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Katz* v. *United States*, 389 U. S. 347, 357 (1967) (footnotes omitted). This was not a principle freshly coined for the occasion in *Katz*, but rather represented this Court's longstanding understanding of the relationship between the two Clauses of the Fourth Amendment.[1] See *Katz, supra,* at 357, nn. 18 and 19. Since the time of *Katz,* this Court has recognized the existence of additional exceptions. See, *e. g., Donovan* v. *Dewey,* 452 U. S. 594 (1981); *United States* v. *Martinez-Fuerte,* 428 U. S. 543 (1976); *South Dakota* v. *Opperman,* 428 U. S. 364 (1976). However, we have consistently reaffirmed our understanding that in all cases outside the exceptions to the warrant requirement the Fourth Amendment requires the interposition of a neutral and detached magistrate between the police and the "persons, houses, papers, and effects" of citizens. See, *e. g., Welsh* v. *Wisconsin,* 466 U. S. 740, 748–750 (1984); *United States* v. *Place,* 462 U. S. 696, 701–702 (1983); *United States* v. *Ross,* 456 U. S. 798, 824–825 (1982); *Steagald* v. *United States,* 451 U. S. 204, 211–212 (1981); *Mincey, supra,* at 390; *Coolidge* v. *New Hampshire,* 403 U. S. 443, 474–475 (1971) (plurality opinion); *Vale* v. *Louisiana,* 399 U. S. 30, 34 (1970); *Terry* v. *Ohio,* 392 U. S. 1, 20 (1968).

A

Although the homicide investigators in this case may well have had probable cause to search the premises, it is un-

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized." U. S. Const., Amdt. 4.

disputed that they did not obtain a warrant.[2] Therefore, for the search to be valid, it must fall within one of the narrow and specifically delineated exceptions to the warrant requirement. In *Mincey* v. *Arizona*, 437 U. S. 385 (1978), we unanimously rejected the contention that one of the exceptions to the Warrant Clause is a "murder scene exception." Although we noted that police may make warrantless entries on premises where "they reasonably believe that a person within is in need of immediate aid," *id.*, at 392, and that "they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises," *ibid.*, we held that "the 'murder scene exception' . . . is inconsistent with the Fourth and Fourteenth Amendments—that the warrantless search of Mincey's apartment was not constitutionally permissible simply because a homicide had recently occurred there." *Id.*, at 395. *Mincey* is squarely on point in the instant case.

## B

The Louisiana Supreme Court attempted to distinguish *Mincey* in several ways. The court noted that *Mincey* involved a 4-day search of the premises, while the search in this case took only two hours and was conducted on the same day as the murder. See 448 So. 2d, at 671. Although we agree that the scope of the intrusion was certainly greater in *Mincey* than here, nothing in *Mincey* turned on the length of time taken in the search or the date on which it was conducted. A 2-hour general search remains a significant intrusion on petitioner's privacy and therefore may only be conducted subject to the constraints—including the warrant requirement—of the Fourth Amendment.

---

[2] Indeed Chief Justice Dixon's dissent in this case in the Louisiana Supreme Court reads in its entirety as follows: "I respectfully dissent. All it would take to make this search legal is a warrant." 448 So. 2d 666, 673 (1984).

The Louisiana Supreme Court also believed that petitioner had a "diminished" expectation of privacy in her home, thus validating a search that otherwise would have been unconstitutional. 448 So. 2d, at 671. The court noted that petitioner telephoned her daughter to request assistance. The daughter then called the police and let them in the residence. These facts, according to the court, demonstrated a diminished expectation of privacy in petitioner's dwelling and therefore legitimated the warrantless search.[3]

Petitioner's attempt to get medical assistance does not evidence a diminished expectation of privacy on her part. To be sure, this action would have justified the authorities in seizing evidence under the plain-view doctrine while they were in petitioner's house to offer her assistance. In addition, the same doctrine may justify seizure of evidence obtained in the limited "victim-or-suspect" search discussed in *Mincey*. However, the evidence at issue here was not discovered in plain view while the police were assisting petitioner to the hospital, nor was it discovered during the "victim-or-suspect" search that had been completed by the time the homicide investigators arrived. Petitioner's call for help can hardly be seen as an invitation to the general public that would have converted her home into the sort of public place for which no warrant to search would be necessary. Therefore, the Louisiana Supreme Court's diminished-expectation-of-privacy argument fails to distinguish this case from *Mincey*.[4]

---

[3] The Louisiana Supreme Court seemed to believe that the fact that "both parties with authority over the premises [petitioner and her husband] were either dead or unconscious and in an apparently grave condition," *id.*, at 671, in some way diminished petitioner's expectation of privacy in the premises. Yet neither petitioner's unavailability nor the death of her husband have any bearing on petitioner's continuing privacy interests.

[4] The Louisiana court's argument in fact closely resembles an argument we rejected in *Mincey*. See 437 U. S., at 391–392.

The State contends that there was a sufficient element of consent in this case to distinguish it from the facts of *Mincey*. The Louisiana Supreme Court's decision does not attempt to validate the search as consensual, although it attempts to support its diminished-expectation-of-privacy argument by reference to the daughter's "apparent authority" over the premises when she originally permitted the police to enter. 448 So. 2d, at 671. Because the issue of consent is ordinarily a factual issue unsuitable for our consideration in the first instance, we express no opinion as to whether the search at issue here might be justified as consensual. However, we note that both homicide investigators explicitly testified that they had received no consent to search. Any claim of valid consent in this case would have to be measured against the standards of *United States* v. *Matlock*, 415 U. S. 164 (1974), and *Schneckcloth* v. *Bustamonte*, 412 U. S. 218 (1973).

### III

For the reasons stated above, petitioner's motion for leave to proceed *in forma pauperis* is granted, the petition for writ of certiorari is granted, the judgment of the Louisiana Supreme Court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*