476 So.2d 989 (1985)
STATE of Louisiana
v.
Jerome PRICE.
Nos. 85KA0258, 85KA0259.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
*990 Martin Caillouet, Asst. Dist. Atty., Thibodaux, for plaintiff-appellee State of Louisiana.
C. Alan Lasseigne, Thibodaux, for defendant-appellant Jerome Price.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
Jerome Price (defendant) was charged by bill of information with simple burglary of the William Martin residence in violation of LSA-R.S. 14:62. Defendant pled not guilty and, following trial by jury, was convicted as charged. He was sentenced to nine years in the custody of the Louisiana Department of Corrections. Defendant was subsequently charged and adjudicated a second felony habitual offender. LSA-R.S. 15:529.1. After vacating defendant's original sentence, the court re-sentenced defendant to nine years in the custody of the Louisiana Department of Corrections. Defendant *991 brings this appeal urging four assignments of error, which will be discussed in detail below.
Defendant was arrested at the home of his uncle, Raymond Price, for an unrelated burglary and was taken to a detention center. Officers then secured permission from Raymond Price to search the bedroom that he shared with defendant. In Raymond Price's presence, the officers seized a jewelry box from the top of a dresser and a bag containing a medicine bottle from inside a dresser drawer. At that time, the officers were also aware that the home of William Martin, a music teacher, had been burglarized. Some of the items found inside the jewelry box bore the initials W.M. and some pieces of jewelry were of musical subjects. Defendant was confronted with these facts after the Martins had identified the seized items. Having been advised of his rights, defendant signed a waiver of rights form and voluntarily gave a taped statement concerning the Martin burglary. The contents of that statement revealed that other jewelry and medicine bottles taken from the Martins had been tossed into a drainage ditch behind his uncle's home and that a musical instrument (identified by defendant as a flute but in reality a clarinet) was still inside the bedroom that he shared with his uncle. With the aid of Raymond Price, officers retrieved the abandoned items which were still in the ditch. Raymond's sister, Shelia Price, found the clarinet and voluntarily surrendered it to the police. Based on this information, defendant was charged with the Martin burglary.

ASSIGNMENTS OF ERROR NUMBER 1 AND 2
Defendant contends that the trial court erred by failing to suppress his taped statement and physical items seized as they were fruits of the instant warrantless search. Defendant further contends that the instant search cannot be justified based on Raymond Price's consent.
Defendant acknowledges that a valid consent search is a well-recognized exception to the warrant requirement. See State v. Smith, 433 So.2d 688 (La.1983). However, he urges that Raymond Price's consent cannot be valid under the facts of this case. In brief, defendant relies on the recent United States Supreme Court decision of Thompson v. Louisiana, ___ U.S. ___, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984), which reversed a Louisiana Supreme Court decision that upheld the validity of a warrantless "murder scene" search of that defendant's home. See State v. Thompson, 448 So.2d 666 (La.1984) and on remand, 466 So.2d 39 (La.1985). We note that defendant's reliance on that decision is totally unjustified. As the United States Supreme Court observed:
The Louisiana Supreme Court's decision does not attempt to validate the search as consensual, although it attempts to support its diminished expectation of privacy argument by reference to the daughter's "apparent authority" over the premises when she originally permitted the police to enter. State v. Thompson, supra, at 671. Because the issue of consent is ordinarily a factual issue unsuitable for our consideration in the first instance, we express no opinion as to whether the search at issue here might be justified as consensual. However, we note that both homicide investigators explicitly testified that they had received no consent to search. Any claim of valid consent in this case would have to be measured against the standards of United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) and Schneckcloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). 105 S.Ct. at 412.
Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Bodley, 394 So.2d 584 (La.1981).
The authority which justifies the thirdparty consent does not rest upon the law of property, with its attendant historical *992 and legal refinements, [citations omitted] but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. 415 U.S. at 172, n. 7, 94 S.Ct. at 993, n. 7.
Thus, the United States Supreme Court identified two bases for its "common authority" rule: (i) that the consenting party could permit the search "in his own right;" and (ii) that the defendant had "assumed the risk" that a co-occupant might permit a search.
Defendant makes much of the fact that he was not asked to give his permission to search the premises prior to being transported for booking. He urges that a third party's consent is ineffective when the police bypass an opportunity to seek consent from the defendant. However, the facts of the instant case can be readily squared with those of Matlock. Therein, Matlock was arrested in the front yard of a house where he lived with other individuals. Despite the fact that the arresting officers were aware that Matlock lived in the house, they did not ask whether he would consent to a search. Rather, the officers sought permission of a woman who jointly occupied a bedroom with Matlock. Within a bedroom closet, the officers found and seized money taken in a bank robbery. See also State v. Johnson, 319 So.2d 786 (La.1975).
In the instant case, defendant resided in a house owned by Raymond Price and Raymond's brother, Roland, for about three months prior to his arrest. Raymond testified that he established the rules for the household and allowed defendant to share his bedroom. With Raymond's consent and under his supervision, the officers searched that room. They found jewelry taken during the Martin burglary inside a jewelry box which was located on top of a dresser shared by Raymond and defendant. Raymond's family owned that box, and Raymond was not aware that defendant was using it until its contents were revealed. The other item seized during that search, a medicine bottle found inside a dresser drawer, was suppressed by the trial court based on its finding that the drawer was reserved for the exclusive use of defendant. However, the trial court ruled that the items found on top of the dresser were located in a common area, primarily under the control of Raymond Price.
The record in the instant case clearly supports the finding of the trial court that Raymond Price had uncontrolled access to all items located on top of the dresser. Raymond retained his own right to allow such a search. Defendant, by participating in such a living situation, assumed the risk that another occupant, in particular his uncle, might admit the police. As noted by the United States Supreme Court in Matlock, "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." 94 S.Ct. at 993.
Finding that the instant search was based on a valid third party consent, the evidence seized was properly admitted into evidence. Defendant's contention that the confession was illegally obtained is based directly on the claim that the search was illegal. Because we have concluded that the search was legal, the objection to the introduction of the confession is also without merit. See State v. Forbes, 310 So.2d 569 (La.1975).
For the foregoing reasons, these assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER 3
Defendant contends that the trial court erred by failing to grant defendant's motion for mistrial made after the State attempted to improperly impeach defendant.
The record reveals the following pertinent exchange between the prosecutor and defendant during cross examination:
Q. Is Shelia Price lying when she said she found a clarinet in your bedroom?

*993 A. No. Because it was in the bedroom.
Q. Do you remember testifying in this court approximately a week or two ago?
A. Testifying what?
Q. Testifying. In the witness chair.
A. Not everything I said, no.
Q. And answered some questions that I asked you?
A. You asked me about two questions, I think.
Q. No. I asked you more than two.
Q. Do you remember Shelia Price testifying at the time?
A. Uh-huh.
Q. Saying that she found a clarinet?
A. Yes.
Q. Do you remember me asking you if she was lying about finding the clarinet, and what your response was?
A. I don't remember, but, I don't think I said no.
* * * * * *
Q. Do you remember me asking you if the clarinet was in your closet?
A. Uh-huh.
Q. And what was your answer?
A. I said no, I think, I ain't sure.
Q. Do you remember me asking you did you deny that it was even there?
At that point, defense counsel asked that the jury be removed so that he could make an objection. Out of the presence of the jury, the trial court correctly ruled that there was no genuine conflict between defendant's testimony during the motion to suppress and at trial, and sustained defendant's objection. In addition, defendant admitted that his prior testimony differed in some respects from his testimony at trial. Hence a proper foundation was not laid for use of defendant's prior testimony for impeachment purposes at trial. See LSA-R.S. 15:493. The prosecutor's attempt to impeach defendant by means of a prior inconsistent statement was effectively aborted. However, the trial court declined to grant defendant's motion for mistrial, and the trial court and defense counsel were unable to reach agreement on an appropriate admonition.
This questioning, although arguably improper in form and content, did not fall within the specific grounds for a mistrial under Louisiana Code of Criminal Procedure article 770. Nor did the questioning amount to prejudicial conduct that would make it impossible for defendant to obtain a fair trial, which would be grounds for mistrial under Louisiana Code of Criminal Procedure article 775. Arguably, defendant may have been entitled to an admonition from the trial court, under Louisiana Code of Criminal Procedure article 771. However, the evidence against defendant was substantial. It is very doubtful the court's failure to admonish, or this line of questioning, which was effectively aborted when defendant's objection was sustained, contributed to defendant's conviction. See, La.C.Cr.P. art. 921; State v. St. Amant, 413 So.2d 1312 (La.1981). Defendant's substantial rights were not affected, and he was not prejudiced.
Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 4
Defendant contends that his sentence to nine years at hard labor was excessive.
As a habitual offender, whose second felony conviction was for simple burglary, defendant's sentencing exposure was from a minimum period of incarceration of four years to a maximum sentence of twentyfour years at hard labor. LSA-R.S. 14:62; LSA-R.S. 15:529.1(A)(1).
The trial court has wide discretion in the imposition of a sentence within statutory limits. State v. Sepulvado, 367 So.2d 762 (La.1979). The penalty actually imposed by the trial court, about one-third of the maximum assessable penalty, is not apparently excessive.
The record before us reflects that the trial court adequately considered the sentencing guidelines presented in Louisiana Code of Criminal Procedure article 894.1 in particularizing the sentence to this defendant. In imposing sentence, the trial judge noted:

*994 What I have considered is the fact that this burglary was committed while you were on active probation for the first felony for which you were convicted. In the plea bargain which resulted in that conviction, the State agreed to drop two other charges of simple burglary which it had against you at that time.... Apparently, the break you received on that last offense did not convince you to stay away from criminal activity, ... You were warned the last time that the consequences of continued criminal behavior would be punished severely. You chose to ignore the warning and have left me no choice but to see that society is protected from you.
In brief, defendant urges that the trial court failed to give proper weight to two mitigating factors in assessing an appropriate penalty. The factors identified are: (1) no one was home when the burglary occurred and (2) most of the items stolen were "junk." Both facts are merely fortuitous and thereby entitled to very little weight in determining an appropriate sentence in this instance.
We find no manifest abuse of discretion in the factors considered or the weight given to those factors. This assignment of error is without merit.
For the reasons stated, defendant's conviction and sentence are affirmed.
AFFIRMED.