482 So.2d 812 (1986)
STATE of Louisiana
v.
Ethel LAMBERTUS.
No. KA-3421.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1986.
Rehearing Denied February 26, 1986.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Timothy M. Warner, Judith Brewster, Asst. Dist. Attys., New Orleans, for plaintiff-appellee.
Anthony L. Marinaro, Silvestri & Massicot, New Orleans, John H. Craft, Craft & *813 Doskey, New Orleans, for defendant-appellant.
Before SCHOTT, BARRY and ARMSTRONG, JJ.
BARRY, Judge.
Ethel Lambertus was convicted of being a principal to second degree murder, La. R.S. 14:30.1, and sentenced to life imprisonment at hard labor. Lambertus was indicted with Fritz Burton and Kevin Rodrigue and her trial was severed. Burton and Rodrigue were also convicted of being principals to second degree murder.
In December, 1981 Lambertus and her teenage daughter, Vickie, moved into the home of an elderly invalid, Mrs. Floy Brown, to care for her. Rodrigue, Vickie's boyfriend, and Burton soon took up residence with them. Mrs. Brown was rarely seen after the four moved into the house. Mrs. Cynthia Hobbs, the next door neighbor, tried to visit Mrs. Brown in the spring, but Lambertus told her that the invalid was asleep. Mrs. Hobbs finally reached Mrs. Brown by phone and noticed that she sounded weak or sleepy.
Vickie and Rodrigue used the shed behind the Brown home as a bedroom, and Lambertus and Burton frequently went out drinking together. Vickie testified that her mother drank often and had a bad temper when she was intoxicated. She said her mother and Mrs. Brown had several arguments over money and a will bequeathing the Brown home to Lambertus was prepared by her mother's attorney.
Ten days before her death, Mrs. Brown locked everyone out of the house. Burton and Rodrigue broke down the door and shoved her while she was seated in her wheelchair. Later that day Lambertus slapped Mrs. Brown because she hit her with a chair leg.
Mrs. Hobbs said until Lambertus moved in, Mrs. Brown's appearance was immaculate. A week before Mrs. Brown died Mrs. Hobbs said she looked very unkempt. The following day Mrs. Hobbs and Vickie heard screaming, breaking glass and pounding sounds coming from Mrs. Brown's room. Vickie went inside and saw her mother put sleeping pills in orange juice and was told not to worry because "it" would be over soon. Later Mrs. Hobbs saw Lambertus, Rodrigue and Burton each go to the shed. That evening Mrs. Hobbs called the police and saw them speak to Lambertus and leave. Lambertus told Mrs. Hobbs that she was tired of living with Mrs. Brown.
Lambertus testified that on the morning prior to the victim's death, Burton, suffering from a hangover, was awakened by Mrs. Brown pounding on her door. Lambertus said she saw Burton smothering Mrs. Brown with a pillow while he repeatedly punched and slapped her. Lambertus stated she was concerned about Mrs. Brown's condition and discovered the dead body early the following morning. Later in the day Mrs. Hobbs observed Lambertus staggering in the yard and testified that she appeared "very, very high". Lambertus told her she had taken a half bottle of sleeping pills. That evening Burton and Rodrigue told Vickie of Mrs. Brown's death and she confided in Mrs. Hobbs who called the police. Lambertus initially refused to admit the officers, stating, "Not again, I am tired of being bothered." She told the police there was nothing wrong, but would not let them in because there was a lady sleeping inside. The officers again asked for admittance, and Lambertus relented saying: "Okay, come on in. She's dead."
Mrs. Brown's nude body was bruised from head to foot and the coroner testified she died of multiple injuries caused by blows with a blunt instrument. There were four deep cuts on her shoulder. A butcher knife and a claw hammer were found in Lambertus' bedroom. False teeth, a broken mirror, and a slashed photo of the victim were discovered on a trashpile in front of the residence.

ORAL STATEMENTS
Lambertus contends it was error to admit two of her oral statements. The first, "Okay, come on in. She's dead." was made *814 while police were attempting to gain admittance to the home. Lambertus claims she was in custody the moment she opened the door and her response was inadmissible absent Miranda warnings. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Lambertus was neither in custody nor was her response the result of interrogation. She voluntarily blurted out the unsolicited statements. Spontaneous and voluntary remarks are admissible without Miranda warnings even if the defendant is in custody. State v. Robinson, 384 So.2d 332 (La.1980).
Her other statement accused Burton and Rodrigue of murder and was made after she acknowledged an understanding of her rights. Lambertus invoked her right to counsel immediately after making the statement which indicates she understood the Miranda warnings.
This statement was made after a knowing and intelligent waiver and was admissible. Miranda, supra 86 S.Ct. at 1612.

WARRANTLESS SEARCH
Lambertus alleges it was error to admit the knife, hammer, false teeth, broken mirror and photograph into evidence because they were seized during a warrantless search of the house. She argues the search was not supported by a valid exception to the warrant requirement or by consent.
The items seized from the trashpile had been abandoned, therefore, no reasonable expectation of privacy existed to mandate a warrant. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
Lambertus voluntarily consented to the house search when she stated, "Okay, come on in." A consent search is a recognized exception to the warrant requirement. State v. Ludwig, 423 So.2d 1073 (La.1982). Additionally, the police may make warrantless entries when "they reasonably believe that a person within is in need of immediate aid," or "to see if there are other victims or if a killer is still on the premises." Thompson v. Louisiana, ___ U.S. ___, 105 S.Ct. 409, 83 L.Ed.2d 246 (U.S.La.1984).

ATTORNEY-CLIENT PRIVILEGE
Lambertus alleges the court erred in ordering her counsel to testify concerning the unsigned will he drafted for Mrs. Brown. She claims his testimony violated her attorney-client privilege and was also inadmissible due to its irrelevant or prejudicial nature.
At a recusal hearing defense counsel stated his testimony would not harm his client. The court reviewed the state's questions and found they did not infringe on the relationship. The draft of the will named Lambertus as a legatee, thus showing she may have gained by the victim's death. Lambertus understood the potential problems yet still desired his representation, thereby waiving her privilege.
The testimony and evidence were relevant and proper.

IMPROPER EVIDENCE
Lambertus objected to the introduction of photographs of the knife and hammer near her bed. She maintains they were not authenticated and no predicate was established.
State v. Sweeney, 443 So.2d 522, 528 (La.1983) specifies:
To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody from the time it was seized to the time it was offered in evidence. State v. Drew, 360 So.2d 500 (La.1978), cert. den. 439 U.S. 1059, 99 S.Ct. 820 [59 L.Ed.2d 25] (U.S.La.1979). The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered. For admission, it *815 suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case.
The homicide investigator arrived on the scene within a short time and supervised the gathering of evidence. He established the chain of custody and identified the contested photographs, thus they were properly admitted.

INSUFFICIENT EVIDENCE
Lambertus asserts the evidence was insufficient to convict. She maintains anyone living in the house could have administered the fatal beatings.
After Lambertus, Rodrigue and Burton moved into the victim's home, neighbors rarely saw Mrs. Brown. Lambertus and the victim had several arguments. Lambertus had access to Mrs. Brown's funds and she had her attorney prepare a will which gave her the house. Mrs. Brown signed notes transferring personal items including a television and fur coat to Lambertus, Burton and Rodrigue. Sounds of pounding, arguing and breaking glass were heard coming from the victim's bedroom. Lambertus was observed putting sleeping pills (Benadryl) in orange juice and traces of Benadryl were found in the victim's bloodstream. Lambertus admitted being in the room when the victim was beaten. She did not call the police after discovering the body.
In a second degree murder prosecution the state must prove there was a killing of a human being and the offender had a specific intent to kill or to inflict great bodily harm. R.S. 14:30.1.
R.S. 14:24 defines a principal as:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
When the state's case is based on circumstantial evidence, R.S. 15:438 provides that in order to convict, every reasonable hypothesis of innocence must be excluded.
We find there was sufficient evidence to lead the jury, viewing the evidence in the light most favorable to the prosecution, to find Lambertus guilty of being a principal to second degree murder beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Kahey, 436 So.2d 475 (La. 1983).
Lambertus' conviction and sentence are affirmed.
AFFIRMED.