TAYLOR, Judge.
The appellant, Delores Strange, was convicted of interfering with police officers, a violation of § 17-4 of the Municipal Code of the City of Tuscaloosa. She was fined $50.00 and was ordered to pay court costs.
This case tests the boundaries of the law regarding a search of premises. Ms. Strange blocked officers who were attempting to search a bedroom in her home. If this attempted search was constitutional, then Ms. Strange’s conduct was interference, and her conviction should be affirmed. If, however, the search exceeded constitutional bounds, then her conduct in refusing to allow the search to proceed was lawful.
At approximately 1:00 a.m., on November 8, 1992, three Tuscaloosa police officers knocked on Delores Strange’s front door. Her teenage son, Billy, opened the door and the officers went into the living room of Ms. Strange’s residence, where several of Billy’s friends were also present. Ms. Strange came out from her bedroom to see what the officers wanted.
The officers testified at trial that they told Ms. Strange that they had received a report that a male and female had been fighting in the street around the corner from her house and that, upon investigating, they had been told that the subjects had gone inside Ms. Strange’s house. Ms. Strange, however, testified that the officers never told her why they were in her house.
Ms. Strange told the officers that the only people at her house were she and the children. The officers noticed a closed door down the hall that had light coming from underneath it. One of the children mentioned that two of their friends were in that room. The officers told Ms. Strange that they had to go to the room to talk to the people. Ms. Strange told the officers that she would not allow them to go back to the room but that one of the other children could tell the people in the room to come out so the officers could question them. The officers insisted on going back to the bedroom themselves.
Officer Marty Sellers started to go down the hallway, Ms. Strange stepped in front of him. He attempted to go around her. He said that he told her that if she did not allow him to proceed he would arrest her. Officer Sellers testified that when he attempted to pass Ms. Strange, Ms. Strange “shoved” him. Officer Sellers then placed Ms. Strange under arrest for interfering with a police officer.
Thereafter, the two teenagers who were in the bedroom down the hall came out of the room. When questioned, they stated that *775 they had been arguing outside but that they had not been engaged in a physical fight.
The ordinance that Ms. Strange was found guilty of violating provides:
“(a) It shall be unlawful for any person, by any physical act, to resist arrest or to interfere with, resist, molest, obstruct, hinder or impede any police officer in the discharge of such officer’s duty or to assault, attack, strike or to use any type of physical force toward any such police officer while in the discharge of such officer’s duty.
“(b) When a police officer of the city is engaged in the discharge of such officer’s duty, and this is, or should be, evident to a reasonably prudent person then present, or if such police officer is known to such person to be a police officer of the city or such police officer is in regular police uniform or exhibits a police badge or credentials or otherwise identifies him/herself as such police officer this shall of itself be prima facie notice to such person that the police officer is such and is then and there so acting.”
Tuscaloosa, Code § 17-4.
At issue here is whether the warrantless entry into and the search of Ms. Strange’s home without her consent were constitutional. The Fourth Amendment of the United States Constitution provides:
“The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
If the entry and search were not constitutional, then it was not a lawful “discharge of [Officer Sellers’s] duty,” as described in § 17-4, and, therefore, the arrest of Ms. Strange would be illegal.
“Warrantless searches and seizures are ‘per se unreasonable.’ Ex parte Hilley, 484 So.2d 485, 488 (Ala.1985), citing Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967). To validate the seizure of one’s person or property by such means, the search and seizure must fall within one of the well-recognized exceptions, which are: (1) plain view; (2) voluntary, intelligent, and knowing consent; (3) incident to a lawful arrest; (4) hot pursuit or emergency situations; (5) exigent circumstances coupled with probable cause; and (6) stop and frisk situations. Hilley, 484 So.2d at 488, and citations contained therein. See also Scott v. State, 337 So.2d 1342, 1346 (Ala.Cr.App.1976).”
Cowart v. State, 579 So.2d 1, 3 (Ala.Cr.App.1990).
In this case, the state relies on the emergency situation exception recognized in Mincey v. Arizona, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978) — “the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.”
In Mincey, police officers were conducting an undercover narcotics raid on an apartment. When the officers entered the apartment, they heard “a rapid volley of shots” in one of the bedrooms. One of the officers came out of the bedroom from which the shots had been fired, collapsed on the floor, and thereafter died. The other officers then entered the bedroom to determine if anyone else had been injured. Thereafter, homicide investigators arrived and conducted a four-day search of the apartment.
The Mincey Court recognized that “ ‘[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.’ ” 437 U.S. at 392, 98 S.Ct. at 2413, 57 L.Ed.2d at 300, quoting Wayne v. United States, 318 F.2d 205, 212 (D.C.Cir.1963), cert. denied, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963). The Court, however, refused to find that all searches of murder scenes fell within the emergency or exigency circumstance and held that the four-day search of the murder scene violated the Fourth Amendment.
The United States Supreme Court in Thompson v. Louisiana, 469 U.S. 17, 105 *776 S.Ct. 409, 83 L.Ed.2d 246, (1984), again recognized that “police may make warrantless entries on premises where ‘they reasonably believe that a person within is in need of immediate aid.’ ” 469 U.S. at 21,105 S.Ct. at 411, 88 L.Ed.2d at 251, quoting Mincey, 437 U.S. at 392, 98 S.Ct. at 2413, 57 L.Ed.2d at 300. Thompson, like Mincey, involved a homicide investigation.
In Thompson, the police received a report that someone had been killed at the Thompson residence. When the police arrived, they discovered that one person had been killed and that another had attempted suicide. The Court recognized that the search, the purpose of which was to find injured persons, was permissible but held that a two-hour investigatory search that followed the initial entry and search violated the Fourth Amendment.
Where the exception recognized in Mincey has been cited in Alabama cases, it has also been in relation to homicide investigations. See, e.g., Ex parte Usrey, 527 So.2d 732 (Ala.1987) (police received report that someone had been shot inside their house); State v. Spears, 560 So.2d 1145 (Ala.Cr.App.1989) (police responded to radio dispatch that shooting had occurred at a residence); Billingsley v. State, 437 So.2d 601 (Ala.Cr.App.1983), cert. denied, 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 681 (1984) (dead body was found in residence and police were called). In these cases, before a search was begun, the police had received information that someone had been injured or killed and that weapons had been involved.
In this case, the police officers only had information that a male and female had been fighting in the street and that they had gone inside a house. This information alone does not provide police officers with a reasonable belief that “a person within is in need of immediate aid.” Mincey, 437 U.S. at 392, 98 S.Ct. at 2413, 57 L.Ed.2d at 300. Even after the officers entered Ms. Strange’s home, there was no indication that anyone in the back bedroom was in need of aid. Had the officers seen blood on the floor of the living room, had the room looked as if a struggle had taken place there, or had the officers heard sounds coming from the bedroom that indicated someone was injured or in danger, then a warrantless search of Ms. Strange’s home might have been legal.
Furthermore, “a warrantless search must be ‘strictly circumscribed by the exigencies which justify its initiation.’ ” Mincey, 437 U.S. at 393, 98 S.Ct. at 2413, 57 L.Ed.2d at 300, quoting Terry v. Ohio, 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908 (1968). Ms. Strange offered to have someone get the people in the back bedroom to come into the living room. The officers would not agree to that and insisted on searching the residence themselves.
The warrantless entry into and search of Ms. Strange’s home violated her rights guaranteed under the Fourth Amendment of the Constitution of the United States. Therefore, her actions to prohibit the entry and search cannot subject her to a criminal conviction for interfering with police officers.
For the foregoing reasons, the appellant’s conviction is reversed and a judgment rendered in her favor.
REVERSED AND RENDERED.
All the Judges concur, except MONTIEL, J., who dissents without opinion.