OPINION
On November 12, 1998, Patrolman Troy Cochran of the Newark Police Department was dispatched to an apartment complex to check on the well being of a resident therein, Misty Luckeydoo, who had been involved in a domestic situation the previous day. Ms. Luckeydoo resided with appellant, Leslie Burgess. Upon arriving at the apartment, Patrolman Cochran entered and ascertained no one was present. Patrolman Cochran observed a 12 gauge shotgun in plain view. On December 30, 1998, the Licking County Grand Jury indicted appellant for having a weapon while under a disability in violation of R.C. 2923.13(A)(2). On January 21 and 22, 1999, respectively, appellant filed a motion to suppress and an amended motion to suppress claiming an illegal search. A hearing was held on February 9, 1999. By judgment entry filed February 12, 1999, the trial court denied said motion. On March 9, 1999, appellant pled no contest to the charge. By judgment entry filed same date, the trial court found appellant guilty and sentenced him to three years community control. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE STATE FAILED TO ESTABLISH THAT EXIGENT CIRCUMSTANCES JUSTIFIED THE WARRANTLESS SEARCH OF THE PREMISES.
 II ASSUMING WITHOUT CONCEDING THAT THE OFFICER'S INITIAL INTRUSION INTO APPELLANT'S APARTMENT WAS LAWFUL, THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE OFFICER'S CONTINUED PRESENCE AT THE PREMISES EXCEEDED THE PERMISSIBLE SCOPE AND PURPOSE OF THE INITIAL INTRUSION.
 III THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE STATE FAILED TO ESTABLISH THAT THE PLAIN VIEW EXCEPTION JUSTIFIED THE SEIZURE OF THE SHOTGUN.
 IV THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS WHEN IT RULED THAT APPELLANT HAD CONSENTED TO THE SEIZURE OF THE SHOTGUN.
Appellant's four assignments of error challenge the trial court's denial of his motion to suppress. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, " . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 I
Appellant claims Patrolman Cochran lacked sufficient exigent circumstances to enter the apartment. We disagree. The existence of exigent circumstances permits police to enter into a residence without a warrant. Exigent circumstances is synonymous with an emergency, whether it be actual or ongoing. Mincey v. Arizona (1978), 437 U.S. 385. In State v. Hyde (1971), 26 Ohio App.2d 32,34, Judge Victor of the Ninth District Court of Appeals explained the following: `The right of the police to enter and investigate in an emergency without accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers. * * *.' United States v. Barone (C.C.A. 2), 330 F.2d 543, at 545.
* * *
The present Chief Justice of the United States, speaking for the Court of Appeals for the District of Columbia, in the case of Wayne v. United States (D.C. Cir.), 318 F.2d 205, at 212, said:
 `Breaking into a home by force is not illegal if it is reasonable in the circumstances.' `The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent exigency or emergency.'
The facts presented sub judice clearly fall within this scope of coming to the aid of a potentially injured person. Patrolman Cochran was summoned to the apartment by Ms. Luckeydoo's father, John Luckeydoo. Mr. Luckeydoo told Patrolman Cochran the following: A. He stated that his daughter had been in a domestic violence situation the day prior; that officers had been there. They hadn't heard from her all day, and she was supposed to have been home during the day. Just wanted to check — go in with him to check, make sure that she wasn't injured inside the apartment. Q. What was Mr. Luckeydoo's demeanor like at the time? A. Very nervous and excited.
 Q. Did you, prior to going into the residence, confirm that the police had been there the prior day?
 A. It was checked with dispatch to verify whether or not officers had been there the day before.
T. at 6.
Mr. Luckeydoo testified his daughter had come to his home the night before "holding her head on both sides," asking for help and complaining about a vision problem because of a beating from appellant. T. at 28. Mr. Luckeydoo was fearful that she had a blood clot or a brain concussion. Id. Mr. Luckeydoo attempted to find his daughter the next day but was unsuccessful. A friend of his daughter's told him his daughter was coming to his house. T. at 30. After Ms. Luckeydoo failed to arrive, Mr. Luckeydoo called her home and received no answer, and called her work and discovered she had not shown up. T. at 31. Mr. Luckeydoo then went over to Ms. Luckeydoo's apartment and banged on the door. T. at 32. After observing her vehicle in the parking lot, Mr. Luckeydoo became worried and called the police. T. at 33-34. Faced with the unexplained absence of Ms. Luckeydoo from work, the presence of her vehicle at her apartment, the unanswered door and the previous day's situation involving medical complaints received from a beating, we find sufficient facts to qualify as exigent circumstances. Patrolman Cochran's entrance into the apartment without a warrant was legal. Assignment of Error I is denied.
 II
Appellant claims once Patrolman Cochran ascertained no one was in the apartment, his continued presence was beyond the scope necessary to search under the exigent circumstances standard. We disagree. Appellant argues once Patrolman Cochran determined Ms. Luckeydoo was not in the apartment, he should have left. Basically, appellant argues Patrolman Cochran could not seize the shotgun in question because its discovery was after the initial search of the apartment for Ms. Luckeydoo. In Ohio Arrest, Search and Seizure (1999 Ed.), Professor Lewis Katz discussed the scope of an emergency search at 185-286, Section 10.5, as follows: Exigent circumstances create justification for limited warrantless searches. The duration of the intrusion and the scope of the search are governed by the constitutional command of reasonableness, which will be evaluated in terms of the emergency. Once the emergency conditions have been alleviated, further intrusion must be sanctioned by a warrant. Any other interpretation of the emergency exception would create another general exception that would swallow the Fourth Amendment principle that warrantless intrusions are per se unreasonable. Furthermore, searches that extend beyond the scope of the actual emergency lead to an inference that the emergency is serving as a pretext to conduct a warrantless search. (Footnotes omitted.) It should be noted the facts sub judice are not parallel to the facts raised in the various decisions involving exigent circumstances. Generally, the searches in the other cases include going beyond the initial area of the exigent circumstances i.e., opening drawers and closets or reentering days or weeks later. Thompson v. Louisiana (1984), 469 U.S. 17; Mincey v. Arizona (1978),437 U.S. 385; Michigan v. Tyler (1978), 436 U.S. 499. In this case, Patrolman Cochran testified upon walking around the apartment looking for Ms. Luckeydoo, he observed "[o]n the floor was a rifle or shotgun case, appeared empty, and in the living room, alongside some bedding that they had on the floor laid out was a shotgun and an open box of shotgun shells." T. at 7. Mr. Luckeydoo testified the shotgun was in the living room "right through the entrance of the apartment door." T. at 52. Because the shotgun was observed during the walk through of the emergency search for Ms. Luckeydoo, we find the discovery of the shotgun in plain view was before the emergency condition was alleviated. The discovery of the shot gun was contemporaneous with the emergency search. Assignment of Error II is denied.
 III, IV
Appellant claims the finding of the shotgun does not fall under the "plain view" exception because the shotgun per se was not evidence of a crime and any consent to its seizure was unlawful. We disagree. The state argues the plain view exception does not apply because the trial court found appellant had consented to the seizure of the shotgun. Appellant argues the consent was the fruit of an illegal search and therefore the shotgun should be suppressed. As we discussed in Assignment of Error II, the search of the apartment qualified under the exigent circumstances test and the discovery of the shotgun was simultaneous with the lawful intrusion. We agree with appellant the shotgun per se was not evidence of a crime. Patrolman Cochran was unaware of appellant's prior criminal record therefore the shotgun was not evidence of any crime at its point of discovery. However, Patrolman Cochran did not seize the shotgun upon discovery. Patrolman Cochran left the apartment without the shotgun. T. at 9. Upon appellant's arrival at the scene, Patrolman Cochran spoke with appellant outside the apartment and the following discussion was had: A. I told him that I wanted to secure the firearm for safekeeping and essentially his protection at the time because — since they had already had a domestic situation there the day before, and he was — he was fine with that. He complied, said that he didn't mind us securing it.
T. at 9.
Based upon the facts, we find the discovery of the shotgun was inadvertent during the search for Ms. Luckeydoo, and appellant freely consented to its seizure. Assignments of Error III and IV are denied.
The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
By Farmer, J. Gwin, P.J. and Hoffman, J. concur.