OPINION
{¶ 1} Defendant, Austin Newell, appeals from his convictions for having weapons under disability, R.C. 2923.13(A)(2), and possession of crack cocaine, R.C. 2925.11(A), and the sentences imposed for those offenses pursuant to law, which were entered on pleas of no contest which Defendant entered after the trial court had overruled Defendant's Crim.R. 12(C)(3) motion to suppress evidence.
 {¶ 2} The evidence Defendant sought to suppress was seized by police from Defendant's home in a search conducted pursuant to a warrant. The affidavit submitted in support of the application for a warrant relied on facts obtained by police on October 24, 2004, following a dispatch to Defendant's home on a call that three armed men were inside, shooting up the residence.
 {¶ 3} When officers arrived at Defendant's home they found Defendant standing in a neighbor's yard. He said that he didn't know whether the three men were yet inside the house. The officers told Defendant they would check his home for the culprits.
 {¶ 4} Three officers, Fuller, Clark and Kraker, entered Defendant's home through an open rear door. While searching for the culprits, the officers observed a set of scales covered with cocaine and a box of baggies, in plain view. In an open closet, the officers observed an open gun safe containing assault rifles and a shotgun. They then notified a fourth officer, Sharp, who had remained outside with Defendant, to detain him for investigation in connection with what they had observed. No other persons were found inside Defendant's house.
 {¶ 5} Officer Sharp placed Defendant in the rear of her police cruiser and then entered his house to verify what she'd been told. She made the same observations of the contraband and guns in plain view. Officer Sharp emerged and advised Defendant of his Miranda rights, after which she questioned him about the report concerning the three men that were inside his home, but not about the contraband and guns that police had found inside.
 {¶ 6} Detectives from the drug task force subsequently arrived and entered Defendant's home. Detective Mullins observed the same contraband and guns, and subsequently obtained a warrant to search the home and seize those articles. In executing the warrant, police found numerous guns and drugs throughout the home that they also seized.
 {¶ 7} Defendant was indicted on four counts of having weapons while under disability, R.C. 2923.13(A)(2), one count of possessing crack cocaine in an amount exceeding ten grams but less than twenty-five grams, R.C. 2925.11(A), two counts of possessing crack cocaine in an amount less than one gram, R.C.2925.11(A), and three counts of possessing cocaine, not crack, in an amount less than five grams, R.C. 2925.11(A). Defendant filed a motion to suppress the evidence recovered from his home. Following a hearing, the trial court overruled Defendant's motion to suppress on January 9, 2006. The court found that the initial warrantless police entry into Defendant's home was justified by exigent circumstances, and that the contraband was initially observed in plain view and subsequently seized pursuant to a valid search warrant.
 {¶ 8} Pursuant to a plea agreement, Defendant entered a plea of no contest to having weapons while under a disability, possessing crack cocaine in an amount between ten and twenty-five grams, and possessing crack cocaine in an amount less than one gram. In exchange, the State dismissed the other pending charges. The trial court found Defendant guilty and sentenced him to prison terms totaling two and one-half years.
 {¶ 9} Defendant timely appealed to this court. The trial court stayed execution of the sentences it had imposed and continued Defendant's pretrial bond as an appeal bond.
 ASSIGNMENT OF ERROR {¶ 10} "ASSUMING ARGUENDO THAT THE INITIAL POLICE ENTRY INTO THE DEFENDANT'S HOME TO DETERMINE IF ANY SUSPECTS WERE STILL PRESENT AT HOME WAS CONSTITUTIONAL WERE THE SUBSEQUENT OBSERVATIONS OF THE POLICE OFFICERS SHARP, PONICHTERA, CONLEY, KRAKER AND MATTHEWS, AFTER THE HOUSE HAD ALREADY BEEN CLEARED, MERELY TO OBTAIN INFORMATION TO OBTAIN A SEARCH WARRANT CONSTITUTIONALLY VALID?"
 {¶ 11} Defendant concedes, and we agree, that the initial warrantless entry into his home by police was reasonable for Fourth Amendment purposes because it was justified by a well-recognized exception to the warrant requirement: exigent or emergency circumstances. Under that exception to the Fourth Amendment warrant requirement, police may make a warrantless entry into a structure, including a private home, when they reasonably believe that immediate action is necessary to either protect that property or assist persons inside who may be in danger or in need of immediate aid. State v. Berry,167 Ohio App.3d 206, 2006-Ohio-3035. Police may also enter to check for any victims or suspects that may be inside the premises. Minceyv. Arizona (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290;State v. Upton (March 10, 2006), Hamilton App. No. C-050076,2006-Ohio-1107; State v. Burgess (November 4, 1999), Licking App. No. 99CA00035.
 {¶ 12} The report the officers received that three armed men had entered Defendant's home and were shooting, and his inability to say whether the armed intruders were still inside his home, gave rise to emergency circumstances that posed a potential danger to the safety of the officers and others that justified an immediate warrantless entry into Defendant's home to search for the suspects. Mincey; Upton. Accordingly, the initial warrantless entry by police into Defendant's home did not violate Defendant's Fourth Amendment rights.
 {¶ 13} Nevertheless, a warrantless emergency entry by police must be strictly circumscribed by the exigency that initially justified it, and once the emergency has been alleviated, further intrusion must be sanctioned by a warrant. Mincey; State v.Burchett (June 10, 2004), Montgomery App. No. 20167,2004-Ohio-3101. Defendant argues in this appeal that, notwithstanding the lawfulness of the initial warrantless entry by police into his home, once police had determined that there were no victims or suspects inside Defendant's home, there was no ongoing emergency or threat to anyone's safety including the police officers, and therefore the subsequent entries into Defendant's home by Officer Sharp and Detective Mullins, absent a warrant, violated his Fourth Amendment rights. Defendant citesThompson v. Louisiana (1985), 469 U.S. 17, 105 S.Ct.409,83 L.Ed.2d 246, in support of his contention.
 {¶ 14} In Thompson, police officers arrived at the home in response to a report by Thompson's daughter of a homicide at that location. Thompson's daughter let police inside the home, where they discovered Thompson's husband, dead of a gunshot wound, and Thompson unconscious from an apparent drug overdose. The officers transported Thompson to a hospital and secured the scene. Thirty-five minutes later, two homicide detectives arrived, entered the residence, and conducted a two-hour general exploratory search for evidence of a crime. During that search police discovered evidence that was later admitted during Thompson's trial for murdering her husband. The United States Supreme Court held that the warrantless search for evidence violated Thompson's Fourth Amendment rights.
 {¶ 15} During the course of legitimate emergency activities, such as searching for victims in need of aid or suspects who pose a threat to the safety of the officers or others, police may seize any evidence that is in plain view. Mincey, supra;Thompson, supra. In Thompson, the evidence at issue was not observed by police in plain view during their legitimate emergency activities, while they were assisting Thompson or searching the home for other victims or suspects. Id., at 22. Rather, the evidence was discovered and seized during a later warrantless search, well after the emergency had passed.
 {¶ 16} Unlike Thompson, in this case the police did observe a scale covered with crack cocaine residue and several firearms in plain view during their brief emergency search of Defendant's home for the shooting suspects. Their observation of this evidence was contemporaneous with the legitimate emergency search by the police. Upton; Burgess. Although police had the right to immediately seize that evidence they observed in plain view,Mincey, they did not do so in this case, but rather used their plain view observations to portray probable cause for a search warrant that they obtained before either searching Defendant's home for or seizing any evidence, including that observed in plain view. Thus, Thompson does not control the outcome of this case.
 {¶ 17} When Officer Sharp and Detective Mullins entered Defendant's home after police had completed their initial emergency search of the home for the armed intruders, their purpose was to verify or corroborate reports of what the other officers had observed in plain view inside the home. Their entries were not in response to any emergency. Had Sharp and Mullins then seized the evidence they saw, or searched for other evidence, the exigent circumstances exception to the warrant requirement would not apply. However, all of the evidence police in fact seized, including the evidence that was observed in plain view by the officers who had initially entered Defendant's home to search for the armed intruders, was seized pursuant to the search warrant that Detective Mullins obtained. Accordingly, the determinative issue in this case is the validity of that search warrant and whether it was supported by probable cause. Crim.R. 41.
 {¶ 18} In State v. Nathan (November 16, 2001), Montgomery App. No. 18911, 2001-Ohio-1826, we observed:
 {¶ 19} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates (1983), 462 U.S. 213;State v. George (1989), 45 Ohio St.3d 325.
 {¶ 20} "When reviewing the sufficiency of probable cause in a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit submitted in support of the search warrant establishes probable cause. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Great deference should be accorded to the magistrate's probable cause determination, and doubtful or marginal cases should be resolved in favor of the warrant. Id."
 {¶ 21} Had the affidavit submitted in support of the application for the search warrant relied exclusively on the observations of Officer Sharp and Detective Mullins during their subsequent entries into Defendant's home, the illegality of their warrantless entry would have tainted the evidence on which the issuing judge necessarily relied, undermining the validity of the warrant and the seizure of evidence Defendant sought to suppress. Detective Mullins did state in his affidavit that his own observations corroborated the reports of the other officers concerning contraband and drugs that were in plain view. As and for a showing of probable cause, however, Mullins' affidavit recited the observations of the other officers when they first entered Defendant's home in response to the emergency before them.
 {¶ 22} In the affidavit for this search warrant the affiant, Detective Mullins avers in paragraph B that Officers Fuller, Clark and Kraker initially entered Defendant's home to check for the armed intruders, and though no suspects were found, these officers had observed in an upstairs bedroom, in plain view, a large scale with a heavy coating of cocaine residue, a box of baggies, and other drugs in an open drawer of a night stand next to the bed.
 {¶ 23} In paragraph C, Detective Mullins avers that these same officers also observed in plain view in that same bedroom an open gun safe located in an open closet. Inside that open gun safe these officers observed a shotgun and assault rifles.
 {¶ 24} In paragraph E, Detective Mullins avers that in the basement near a microwave oven, these same officers observed in plain view three glass jars with spoons inside that had a white cocaine residue on them.
 {¶ 25} In paragraph G, Detective Mullins avers that a field test conducted by Officer Kraker on the residue observed on the scales found in the bedroom was positive for cocaine.
 {¶ 26} In paragraph H, Detective Mullins avers that when he arrived at the home he saw the same items in plain view that the initial entering officers had observed.
 {¶ 27} These averments in the affidavit for the warrant provide a substantial basis for the issuing judge's conclusion that there was a fair probability that contraband or evidence of a crime would be found inside 710 Sunnyview Avenue. Gates,George. Hearsay information may be relied upon by the officer providing an affidavit for a search warrant if the officer reasonably believes the information to be true. Franks v.Delaware (1978), 438 U.S. 154, 165, 98 S.Ct. 2674,57 L.Ed.2d 667; State v. Taylor (August 20, 1992), Montgomery App. No. 12860. The basis of knowledge and the veracity of the person supplying hearsay information are circumstances that must be considered in determining the value of the information and whether probable cause exists. George; Taylor. The question is whether the totality of the facts and circumstances presented to the issuing magistrate are sufficient to support a determination that probable cause exists. Id.
 {¶ 28} The totality of the facts and circumstances of the observations of other officers which are set forth in Detective Mullins' averments in his affidavit for the search warrant constitute sufficient probable cause to search 710 Sunnyview Avenue. Accordingly, the search warrant is valid. Even if the observations of Officer Sharp and Detective Mullins after the other officers had already completed their initial emergency sweep of the home for the armed intruders were problematic because they were not in response to any emergency, those observations do not invalidate the probable cause established by the prior independent observations of the other officers who had earlier lawfully entered Defendant's home to search for the armed suspects. Franks v. Delaware. Defendant's Fourth Amendment rights were not violated.
 {¶ 29} At oral argument, Defendant further contended that because his wife had refused to consent to the subsequent entries of their home by Officer Sharp, or perhaps Detective Mullins, their entries were not consensual under the rule of Georgia v.Randolph (2006), ___ U.S. ___, 126 S.Ct. 1515, 164 L.Ed.2d 208. That decision was rendered on March 22, 2006, after the trial court had denied Defendant's motion to suppress on January 9, 2005, and so he could not have relied on Randolph for authority when his motion to suppress was heard. Nevertheless, Defendant could have raised the legal issue involved, and his failure to do so waives any error. In any event, his wife's denial of consent does not invalidate the earlier entry of Defendant's home by the three officers in response to an emergency, from which probable cause for the search warrant was obtained, as we have held.
 {¶ 30} The assignment of error is overruled. The judgment of the trial court will be affirmed.
Fain, J. and Donovan, J., concur.