OPINION
{¶ 1} James Maiolo appeals from his conviction of forgery in the Clark County Common Pleas Court after a jury trial. Maiolo was acquitted of robbery, receiving stolen property, and a tampering with evidence charge.
 {¶ 2} Michelle Pizzo testified at the trial that on January 14, 2002 in the parking lot of the Quality Discount Store that Maiolo approached her from the rear and grabbed her purse. On January 17, two of her personal checks in the amount of $150 were cashed at Freedom Road Bingo in Springfield.
 {¶ 3} On January 19, 2002, Springfield police officers responded to a burglar alarm at the Cold Spot Drive-Thru at 5:00 a.m. The officers observed a broken window at that location and a single pair of footprints in the newly fallen snow on the outside of the building. Two officers followed the footprints across the street where additional footprints met up and then disappeared at Angel Temple's apartment door. Ms. Temple was later identified as Maiolo's niece. After knocking on the apartment door, they were let inside by Ms. Temple or her little cousin.
 {¶ 4} After obtaining a consent to search her apartment from Ms. Temple, police discovered Maiolo hiding in an upstairs shower fully clothed. In a toilet bowl next to the shower, police discovered one of the Pizzo stolen checks ripped into pieces. Under the sink, they found 19 cartons of cigarettes stolen from the drive-thru. Police also found Maiolo's brother Darren hiding in a child's bedroom closet.
 {¶ 5} Ms. Temple told police she had driven Maiolo and his brother to the Freedom Road Bingo the previous day. Mr. Aaron Cox testified that he cashed a Pizzo check for Maiolo the previous day for 40 tickets and he gave Maiolo $110 in change. Deputy Sheriff Camden said he saw Maiolo transacting business with Cox on the 18th. Camden said he had known Maiolo for years.
 {¶ 6} In his first assignment, Maiolo argues that the trial court erred in refusing to grant his Crim.R. 29 motion made at the conclusion of the State's case. Maiolo argues that the State's evidence was insufficient as a matter of law because Maiolo's brother Darren uttered the check to Mr. Cox. Also he argues that Mr. Cox's testimony was suspect since Cox admitted Deputy Camden had told him the defendant was the person who presented the stolen check to him.
 {¶ 7} In determining whether the trial court improperly rejected a motion for acquittal an appellate court's inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Williams (1996),74 Ohio St.3d 569, 660 N.E.2d 724.
 {¶ 8} A rational jury certainly could have concluded that Maiolo uttered the stolen Pizzo check to Cox. Cox identified him and a similar stolen check was found secreted near him at the time of his arrest the next day. The first assignment of error is overruled.
 {¶ 9} In his second assignment, Maiolo contends he was denied the effective assistance of counsel when his trial counsel failed to move to suppress the check recovered from Ms. Temple's bathroom toilet.
 {¶ 10} Maiolo contends there was substantial doubt that Ms. Temple's consent to search was freely and voluntarily given. Second, Maiolo contends he had standing to object to the search of his niece's home because he was an "overnight guest." Lastly, he contends the search of the toilet was unreasonable because a person could not hide in a toilet.
 {¶ 11} The State argues that this argument should be overruled because Maiolo lacks standing to object to the search of his niece's house because he did not live there nor was an overnight guest. Also the State argues there was no evidence Ms. Temple's consent was coerced or limited in its scope.
 {¶ 12} We agree with the State that there is no evidence that Ms. Temple's consent was coerced or was merely submission to police authority. There is also no evidence that Maiolo and his brother were "overnight guests." Lastly, and more importantly the search conducted by the police officers was reasonable under all the circumstances without regard to whether Ms. Temple granted the consent for the search.
 {¶ 13} The United States Supreme Court has permitted "hot pursuit" entry into a home in search of a fleeing felon. Warden v. Hayden (1962),387 U.S. 294. The facts in Warden are remarkably similar to the facts in this matter. In Warden, police entered the suspect's home within minutes after an armed robbery had occurred in the general vicinity. Here, the police responded to a burglary in progress and proceeded immediately to Ms. Temple's home where the suspects apparently entered. Police searched the Temple home for the burglary suspects and those areas where weapons or fruits of the crime could be hidden. As in Warden, the police knocked and announced their presence and the suspect's wife offered no objection to the search. Police arrested Warden in an upstairs bedroom and recovered a shotgun and pistol in a flush tank of an adjoining bathroom.
 {¶ 14} "We agree with the Court of Appeals that neither the entry without warrant to search for the robber, nor the search for him without warrant was invalid. Under the circumstances of this case, `the exigencies of the situation made that course imperative.' McDonald v.United States, 335 U.S. 451, 456. The police were informed that an armed robbery had taken place, and that the suspect had entered 2111 Cocoa Lane less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape.
 {¶ 15} "We do not rely upon Harris v. United States, supra, in sustaining the validity of the search. The principal issue in Harris was whether the search there could properly be regarded as incident to the lawful arrest, since Harris was in custody before the search was made and the evidence seized. Here, the seizures occurred prior to or immediately contemporaneous with Hayden's arrest, as part of an effort to find a suspected felon, armed, within the house into which he had run only minutes before the police arrived. The permissible scope of search must, therefore, at the least, be as broad as may reasonably be necessary to prevent the dangers that the suspect at large in the house may resist or escape.
 {¶ 16} "It is argued that, while the weapons, ammunition, and cap may have been seized in the course of a search for weapons, the officer who seized the clothing was searching neither for the suspect nor for weapons when he looked into the washing machine in which he found the clothing. But even if we assume, although we do not decide, that the exigent circumstances in this case made lawful a search without warrant only for the suspect or his weapons, it cannot be said on this record that the officer who found the clothes in the washing machine was not searching for weapons. He testified that he was searching for the man or the money, but his failure to state explicitly that he was searching for weapons, in the absence of a specific question to that effect, can hardly be accorded controlling weight. He knew that the robber was armed and he did not know that some weapons had been found at the time he opened the machine. In these circumstances the inference that he was in fact also looking for weapons is fully justified." 387 U.S. at 298-299.
 {¶ 17} Maiolo has failed to portray that his trial counsel was ineffective for not pursuing a suppression motion. There was no reasonable probability that the trial court would have granted such a motion had it been filed. Accordingly, the second assignment of error is likewise overruled. The judgment of the trial court is Affirmed.
Wolff, J., and Young, J., concur.