OPINION
{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the decision of the Clinton County Court of Common Pleas granting a motion to suppress evidence obtained in connection with an initial warrantless entry into an apartment.[1]
 {¶ 2} Defendant-appellee, Michael P. Wilson, was indicted on three drug-related offenses, two of which carried a firearm specification. Wilson moved to suppress evidence, arguing that the initial warrantless intrusion into an apartment by police responding to a burglary report violated his constitutional rights and all evidence gathered as a result of this violation should be suppressed.
 {¶ 3} After a hearing on the motion, the trial court deferred a decision, giving the parties the opportunity to file written briefs. The trial court "reopen[ed]" the record on the issue of standing, and permitted Wilson to present a witness who testified that she was the tenant of the apartment.
 {¶ 4} The tenant testified that she gave Wilson permission to stay overnight at the apartment, that he had some belongings there, and that he occasionally stayed there, but did not have a key. She indicated that she had been arrested hours before the incident and was in jail when police were called to her apartment on the burglary report.[2]
 {¶ 5} The trial court granted Wilson's motion to suppress the evidence. The state initiated this appeal, setting forth one assignment of error:
 {¶ 6} "THE LOWER COURT ERRED IN GRANTING APPELLEE DEFENDANT'S MOTION TO SUPPRESS!.]"
 {¶ 7} The following testimony was presented at the motion to suppress hearing from a sergeant and a deputy with the Clinton County Sheriff's Office. The sergeant testified that he and two deputies were dispatched around 5:30 a.m. on a call "in reference to a burglary in progress" on May 7, 2005. An anonymous caller stated that two white males and one white female were attempting to gain entry into apartment number six. The caller stated that no one was home in the apartment at the time and one of the male subjects had a handgun him.
 {¶ 8} When the officers arrived, the sergeant noticed a "forced entry to the front window" on the front door of apartment six. Both officers testified that one of the small windows on the door was pushed in or away from its frame, which permitted someone to gain access to the door handle by reaching through this open window frame.
 {¶ 9} As the sergeant attempted to reach through the open frame, a male subject came to the door. The second officer explained that he observed a hand on the other side of the front door at the same time the sergeant was inserting his hand past the dislodged window pane.
 {¶ 10} Police identified themselves and ordered the man to open the door, and he was placed into "investigative custody." The officers entered the apartment with guns drawn and observed a white female on the couch, and she, too, was placed into "investigative custody." The officers both testified that they smelled the odor of anhydrous ammonia emanating from the rear portion of the apartment.
 {¶ 11} The sergeant asked the two individuals in investigative custody whether anyone else was present in the residence. Officers were told "no." However, the officers continued to look for the second male and a weapon, as reported by the anonymous caller.
 {¶ 12} Wilson was found on the floor behind a chair in the front room. The deputy testified that Wilson, who was also unarmed, was located approximately five feet from the bathroom.
 {¶ 13} The deputy proceeded to check the bathroom where he observed on the bathroom floor two syringes and a white, plastic bowl. The deputy testified that he tipped the bowl with his foot and observed a handgun on the floor. The sergeant testified that he inspected the handgun, found it was "fully loaded," unloaded the weapon, and seized it for "officer safety."
 {¶ 14} The sergeant also testified that police removed the three individuals from the apartment for safety reasons, due to the strong odor of anhydrous ammonia coming from the residence. The record indicates that law enforcement officials subsequently obtained consent from the tenant to search the apartment.[3]
 {¶ 15} In its decision on the motion to suppress, the trial court indicated that the state failed to file a written brief after the suppression hearing, and, therefore, the trial court was forced to speculate on the justification used by police to enter the residence.[4]
 {¶ 16} The trial court noted with concern that police were responding to an anonymous tip. The trial court found nothing in the record to support the reliability of the tip other than a "window in need of repair." The trial court stated that police officers should have investigated prior to "invading." The trial court concluded that the facts constituted "a full blown invasion in the middle of the night of a resident's domicile all done without a warrant," and granted the motion to suppress.
 {¶ 17} First, we note that an appellate review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. State v. Bumside, 100 Ohio St.3d 152, 155, 2003-Ohio-5372,1J8. An appellate court must accept the trial court's findings of fact as long as they are supported by competent, credible evidence. Id. However, an appellate court reviews de novo the trial court's application of the law to the facts. State v. Greene, Warren App. No. CA2005-12-129,2006-Ohio-6084, ¶ 8; State v. Featherstone, 150 Ohio App.3d 24,2002-Ohio-6028, 1J10 (reviewing court independently determines, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case).
 {¶ 18} We begin our analysis in the instant case with the basic prem ise that the Fourth Amendment protects a citizen's right to be free from all unreasonable searches and seizures, except in several well defined situations. Horton v. California (1990), 496 U.S. 128, 133,110 S.Ct. 2301. The principal remedy for a violation of Fourth Amendment rights is the exclusion of evidence from the criminal trial of the individual whose rights have been violated. State v. Williams, Cuyahoga App. No. 81364, 2003-Ohio-2647, ¶ 7.
 {¶ 19} The United States Supreme Court has declared that warrantless entries and searches inside a residence are "presumptively unreasonable," Payton v. New Yor/c(1980), 445 U.S. 573, 586,100 S.Ct. 1371, and the state bears a "heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests."Welsh v. Wisconsin (1984), 466 U.S. 740, 749-750, 104 S.Ct. 2091;United States v. Johnson (C.A.6, 1993), 9 F.3d 506, 508; see State v.McHale, Montgomery App. No. 18963, 2002-Ohio-2373.
 {¶ 20} However, law enforcement officers are not required to obtain a warrant before entering a private residence under certain exigent circumstances. Mincey v. Arizona (1978), 437 U.S. 385, 392,98 S.Ct. 2408.
 {¶ 21} The Fourth Amendment does not bar police officers from making warrantless entries into a home when the officers reasonably believe a person within the home is in immediate need of aid or there is a need to protect or preserve life or to avoid serious injury. Id; State v.Burchett, Montgomery App. No. 20167, 2004-Ohio-3101, ¶ 16; State v.Upton, Hamilton App. No. C-050076, 2006-Ohio-1107, ¶ 12 (exigent circumstances includes the risk of undetected escape by a suspect within a residence and a threat of harm posed by the suspect to either himself, the public, or police).
 {¶ 22} The exigent circumstances doctrine requires probable cause plus exigent circumstances to effectuate a warrantless entry of home.United States v. Sangineto-Miranda (C.A.6,1988), 859 F.2d 1501, 1511 fn. 6); State v. Pape, Ashtabula App. No. 2004-A-0044, 2005-Ohio-4657, ¶ 19. Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. State v.Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128.
 {¶ 23} Some courts have recognized that a warrantless entry into a home by law enforcement is permissible to protect the property of the owner or occupant, such as when the police reasonably believe that the premises has been or is being burglarized. United States v. Estese
(C.A.6, 1973), 479 F.2d 1273; United States v. Johnson (C.A.6, 1993),9 F.3d 506, 510 (officers responded to report of a possible burglary in progress, and upon arrival discovered a broken window and two individuals inside); State v. Durbin (July 11, 1988). Butler App. No. CA87-12-167; State v. Sladeck (1998), 132 Ohio App.3d 86, 88-89;State v. Mathis, Summit App. Nos. Civ.A. 22039, Civ.A. 22040,2004-Ohio-6749, ¶ 36, appeal not allowed, 105 Ohio St.3d 1519,2005-Ohio-1880, certiorari denied, U.S., 126 S Ct. 388, appeal not allowed, 109 Ohio St.3d 1458, 2006-Ohio-2226 (since officer reasonably believed burglary was in progress, exigent circumstances existed to justify his entry and a protective sweep of home); State v. Newell, Montgomery App. No. 21567, 2006-Ohio-5980, T7"11 (police may make a warrantless entry into a private home when they reasonably believe that immediate action is necessary to either protect that property or assist persons inside who may be in danger or in need of immediate aid; police may also enter to check for any victims or suspects that may be inside the premises).
 {¶ 24} When police reasonably believe that a burglary is in progress, an immediate warrantless entry undertaken to investigate and protect the property and to assist any victims inside has been upheld by the courts as a reasonable search. State v. Overholser (July 25, 1997), Clark App. No. 96-CA-0073.
 {¶ 25} "It would defy reason to suppose that [officers have] to secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested." United States v. Johnson,9 F.3d at 510, quoting from United States v. Singer (C.A.8, 1982), 687 F.2d 1135,1144.
 {¶ 26} The trial court noted concerns that the police entry in this case was the result of an anonymous burglary-in-progress report. After reviewing the record, we do not find the anonymous nature of this call deleterious to this case.[5]
 {¶ 27} An anonymous tip can be sufficient when its key elements are corroborated by police observation or investigation. Cf. State v.Ross (Jan. 16, 1998), Lucas App. No. L-96-266; cf. State v. AndreReynaldo Tejada, Summit App. No. 20947, 2002-Ohio-5777, ¶ 9 (totality of circumstances used in determining whether anonymous informant's tip supports probable cause finding when issuing warrant).
 {¶ 28} The caller indicated that two white men and a white female were breaking into a specific apartment, and police arrived to find evidence of a forced entry into that apartment. A white male came to the door as police were reacting to what they perceived to be a discovered forced entry. Some, and eventually all, of the statements of the anonymous caller were corroborated by police observation or investigation.
 {¶ 29} In addition, we do not find support in the record for the trial court's finding that the window on the front door of the apartment did not corroborate the burglary call because it was simply in "need of repair." The officers testified to their experience in law enforcement and both judged the condition of the window on the door as evidence of a forced entry. The sergeant acknowledged that the apartment complex was old and "run-down," but indicated that it was "unusual to see a pane that's actually pushed in." A window pane forced open to permit access to the door handle does not support Wilson's claim that it was simply evidence of disrepair issues.
 {¶ 30} Further, it is not clear what investigation the trial court wanted the officers to perform while responding to the call for assistance. If the police had taken the time to inquire about the tenant for the apartment, they would have learned that a female leased the apartment. Further inquiry, might have revealed that the tenant was in jail. None of this information would allay the belief that an armed individual or individuals had illegally entered a place of habitation.
 {¶ 31} Accordingly, we do not share the trial court's conclusions that no probable cause and exigent circumstances existed to justify law enforcement's entry into apartment six to investigate a reported armed burglary in progress.
 {¶ 32} Once inside, the officers were told by the suspects that only two people were inside the building, and no weapon had been discovered. We find that competent, credible evidence supports the belief by police that the exigent circumstances continued and an additional suspect and weapon were still inside the residence. See State v. Mcdougal (Mar. 30, 1983), Summit App. No. C.A. No. 10951 (presence of individuals corroborates the report of a burglary in progress and supports the officers' belief that a crime was being committed inside the house); see, also, e.g., State v. Maiolo, Clark App. No. 2002-CA-87,2003-Ohio-6528 at ¶ 14, citing to Warden v. Hayden (1962), 387 U.S. 294,87 S.Ct. 1642 (speed was essential and only a thorough search of the house for persons and weapons could insure that defendant was only man present and that police had control of all weapons which could be used against them or to effect an escape); see, United States v. Harris, 158 Fed.Appx. 719, 723-724, 2005 Fed. App. 0987N (where police were responding to a "shots fired" and people fighting call, and they found an open view of the kitchen in obvious disarray with no response to their shouts, police were justified to enter and search the home for suspects, victims, and weapons without first obtaining a search warrant).
 {¶ 33} In the case at bar, the trial court stated that police obtained written consent to search from the tenant after the initial illegal entry, but found that all evidence, whether obtained through the initial entry or the subsequent written consent after the entry, should be suppressed. We disagree.
 {¶ 34} We have determined that police were lawfully inside the premises and, could search for victims, suspects, and a reported weapon, and therefore, the syringes found on the floor in plain view will not be excluded. See Horton v. California (1990), 496 U.S. 128, 136-137,110 S.Ct. 2301; State v. Landis, Butler App. No. CA 2005-10-428,2006-Ohio-3538, ¶ 29 (plain view exception authorizes seizure of illegal objects or contraband, regardless of the existence of a warrant, if the initial intrusion leading to the discovery was lawful, item was in plain view, and the incriminating or illegal nature of the items was immediately apparent).
 {¶ 35} We also conclude that law enforcement would have seized the handgun and other evidence not originally in plain view from either the written consent to search obtained from the tenant or upon a search warrant supported by evidence of the anhydrous ammonia odor and the syringes on the bathroom floor. See, e.g., State v. Perkins (1985),18 Ohio St.3d 193, 196 (under the inevitable discovery exception to the exclusionary rule, illegally obtained evidence is admissible at trial if the state demonstrates within a reasonable probability that law enforcement officers would inevitably have discovered the evidence during the course of a lawful investigation).
 {¶ 36} Accordingly, the trial court erred in granting Wilson's motion to suppress evidence. The state's assignment of error is sustained.{¶ 37} Judgment reversed and remanded.
WALSH, P.J., and YOUNG, J., concur.
[1] Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.
[2] The state does not contest on appeal Wilson's standing to object to the warrantless entry into the apartment.
[3] The trial court indicated in its decision that police obtained written consent from the tenant to search the apartment. The trial court made no other finding in regard to the consent to search.
[4] We note that in this appeal the state argues case law that was not provided to the trial court.
[5] The sergeant testified that he was unaware of the identity of the male caller, but understood the caller lived in the same apartment complex at issue. It is not clear from the record whether the sergeant was aware that the caller was a neighbor before or after he responded to the call.