[Cite as *State v. Caldwell*, 2021-Ohio-3777.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-02-017 |
| | : | O P I N I O N |
| - vs - | | 10/25/2021 |
| | : | |
| ROBERT RAPHAEL CALDWELL, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2019-10-1659

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Cook Howard Law, Ltd., and Melynda W. Cook Howard, for appellant.

**PIPER, P.J.**

{¶1} Appellant Robert Raphael Caldwell appeals his convictions in the Butler County Court of Common Pleas for aggravated possession of drugs, trafficking in a fentanyl-related compound, and trafficking in cocaine.

{¶2} In late September and early October 2019, Detective Jason Flick, of the West Chester Police Department, was conducting an investigation regarding drug trafficking in

the West Chester area. Through observation and a reliable, confidential informant, Detective Flick identified Caldwell's vehicle as one that frequented known drug houses. As part of his investigation, Detective Flick became familiar with Caldwell's criminal record and surveilled his movements.

{¶3} On October 4, 2019, Detective Flick received a tip from his informant that Caldwell was in possession of narcotics. After observing Caldwell drive away from a drug house in West Chester, Detective Flick contacted West Chester police officer Guy Veeneman on his cell phone and requested a stop Caldwell's vehicle. Detective Flick told Officer Veeneman about his drug trafficking investigation, noted that he had received a tip that Caldwell was carrying narcotics, gave background information on Caldwell's criminal record, and advised that Caldwell's vehicle had windows that were illegally tinted.

{¶4} At the time of this incident, Officer Veeneman was travelling with Officer Bradley Popplewell. Officer Veeneman was an 18-year veteran of the West Chester Police Department and was serving that day as Officer Popplewell's field training officer. Officer Popplewell had been employed as a West Chester police officer for a little more than three months. He had, however, been trained to recognize the odor of marijuana and had been involved in four marijuana-related incidents in the field.

{¶5} Officers Popplewell and Veeneman located Caldwell's vehicle, noted the illegal window tint, and conducted a traffic stop approximately five minutes after Caldwell left the drug house. Officer Popplewell approached the driver's side door of Caldwell's vehicle, while Officer Veeneman approached the passenger's side door. Officer Popplewell told Caldwell he had been pulled over for a window tint violation. Caldwell gave Officer Popplewell his insurance card and driver's license. Caldwell told him that he had received a previous warning for a window tint violation and that he was in the process of getting it corrected. Officer Popplewell said, "that's fine, I'll just get you another warning." He

returned Caldwell's insurance paperwork but kept the driver's license.

{¶6} As Officer Popplewell and Officer Veeneman returned to their cruiser, Officer Popplewell asked Officer Veeneman, "Call for a canine?" Officer Popplewell relayed that he had smelled the odor of marijuana. Officer Veeneman called for the canine, while Officer Popplewell put Caldwell's information in his computer system. Officer Veeneman contacted the canine unit about its estimated time of arrival. Officers Popplewell and Veeneman later testified that they intended to search the vehicle regardless of whether the canine unit arrived in time because Officer Popplewell had smelled marijuana.

{¶7} A little over twelve minutes after taking Caldwell's license, the officers returned to the vehicle and asked Caldwell to step out. Officer Veeneman told Caldwell they were going to have a canine sniff the vehicle and Caldwell asked why the officers were calling a canine if he was stopped for a window tint violation. Officer Veeneman informed Caldwell that they had recognized the "odor of marijuana coming from the vehicle." Caldwell responded that he had a medical marijuana card. He showed it to the officers and told them he had marijuana in the glove box. Officer Popplewell's testimony revealed that he smelled both burnt and raw marijuana coming from the vehicle.[1] The canine and its handler promptly arrived and were directed to Caldwell's vehicle.

{¶8} The officers stood talking to Caldwell for approximately three minutes while the canine sniffed the vehicle. Upon the canine alerting to the presence of narcotics, Officer Veeneman began to perform a search of Caldwell. He discovered a small bag in Caldwell's front right pocket, and untied it to find a clear plastic baggie filled with narcotics. Officer Veeneman then handcuffed Caldwell and continued searching him before placing him in the back of the squad car under arrest. The baggie was later found to contain 5.5 grams of

---

1. Caldwell emphasizes that Officer Veeneman did not smell the odor, as if Officer Popplewell's credibility then comes into question. However, we note that Officer Veeneman was on the opposite side of the vehicle.

methamphetamine. Officers subsequently conducted a roadside search of the vehicle and found more drugs. After officers later obtained a search warrant, a second, more thorough search of the vehicle was conducted, and cocaine was found.

{¶9} A Butler County Grand Jury indicted Caldwell for nine counts of drug-related offenses. Caldwell filed a motion to suppress evidence pursuant to Crim.R. 12(C)(3) and a hearing was held before the court. At the hearing, Officer Popplewell, Officer Veeneman, and Detective Flick testified. The court admitted both Caldwell's medical marijuana registry identification card and Officer Popplewell's body camera footage as exhibits.

{¶10} At the hearing, the court made an oral decision denying the motion to suppress evidence and issued a written decision one week later. The court found that officers had a reasonable, articulable suspicion to stop Caldwell's vehicle. The court also found that probable cause existed to search both Caldwell's vehicle and his person pursuant to the automobile exception and exigent circumstances, respectively. Additionally, the court determined that even if such exceptions were not applicable, the discovery of the items on Caldwell's person was inevitable and therefore would be admissible pursuant to the inevitable discovery doctrine.

{¶11} Caldwell eventually entered pleas of no contest to all counts in the indictment. At sentencing, the court merged allied offenses and adjudicated Caldwell guilty of three offenses: aggravated possession of drugs in violation of R.C. 2925.11(A), trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(1), and trafficking in cocaine in violation of R.C. 2925.03(A)(1). Caldwell was sentenced to 30 months, 17 months, and 11 months in prison on each count respectively, to run concurrently.

{¶12} Caldwell now appeals, raising the following assignment of error:

{¶13} THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶14} In his sole assignment of error, Caldwell contends that the trial court erred in denying his motion to suppress the evidence seized by officers pursuant to their traffic stop. He argues that the officers illegally prolonged his detention following the initial stop and further, argues that the officers searched his person and vehicle without probable cause.[2]

{¶15} Our review of a trial court's denial of a motion to suppress presents a mixed question of law and fact. *State v. Blatchford*, 12th Dist. Preble No. CA2015-12-023, 2016-Ohio-8456, ¶ 25. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, ¶ 16. Therefore, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Lynn*, 12th Dist. Butler Nos. CA2017-08-129 and CA2017-08-132, 2018-Ohio-3335, ¶ 15. An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8.

## I. Traffic Stop and Duration of Detention

{¶16} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops. *Bowling Green v. Godwin,* 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. When police stop a vehicle based on probable cause that a traffic violation has occurred, the stop is reasonable under the Fourth Amendment.[3] *State v. Cruz,* 12th Dist.

---

2. Caldwell also challenges the validity of the search warrant subsequently obtained. However, as our analysis demonstrates, we need not address that issue.
3. The Ohio Supreme Court has held that in felony cases, Article I, Section 14 of the Ohio Constitution provides the same protection as the Fourth Amendment to the United States Constitution. *State v. Banks-Harvey*, 152

Preble No. CA2013-10-008, 2014-Ohio-4280, ¶ 14. The legality of the traffic stop in this case is not disputed. Officer Popplewell's suppression hearing testimony that Caldwell was pulled over for a window tint violation is uncontroverted and served as the lawful basis for the stop. *Dayton v. Erickson*, 76 Ohio St.3d 3, 1996-Ohio-431, paragraph one of the syllabus. The focus of our first inquiry, therefore, is whether the officers illegally prolonged Caldwell's detention. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 8.

{¶17} When detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Howard*, 12th Dist. Preble Nos. CA2006-02-002 and CA2006-02-003, 2006-Ohio-5656, ¶ 15. This time period also includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 17. "'In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'" *Howard* at ¶ 15, quoting *State v. Carlson*, 102 Ohio App. 3d 585, 598 (9th Dist. 1995).

{¶18} Ohio courts, along with the United States Supreme Court, have determined "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 25. Moreover, a lawfully detained vehicle may be subjected to a canine sniff of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity. *Id.* Stated differently, a canine sniff of a vehicle may be conducted within the time period necessary to effectuate the original

---

Ohio St.3d 368, 2018-Ohio-201, ¶ 16. Caldwell brings his claims under both constitutions, and all analysis herein reflects both documents.

purpose of the stop. *Batchilli,* at ¶ 12. However, it must also be noted, the detention "may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Id.,* quoting *Howard* at ¶ 16.

{¶19} The smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search. *State v. Moore*, 90 Ohio St.3d 47, 2000-Ohio-10, paragraph one of the syllabus. The odor of burnt marijuana was indicative of probable cause in this situation even though Caldwell had a medical marijuana card, because under Ohio's Medical Marijuana Control Program, "[t]he smoking or combustion of medical marijuana is prohibited." R.C. 3796.06(B)(1).[4]

{¶20} Caldwell contends that Officer Popplewell's assertion that it took ten minutes to complete the necessary license checks and make notes on his dash computer is not credible. We disagree. Officer Popplewell was still in field training at the time of this incident, which required dialogue and interaction with his field training officer. Officer Popplewell would not be expected to process and clear a stop as quickly as a veteran officer. Moreover, Officer Veeneman testified that he did not recall delaying matters for the canine to arrive, and that he typically tried to check Officer Popplewell's work to ensure it was accurate before returning to stopped vehicles. As previously indicated, the court was obligated to consider the totality of the circumstances.

{¶21} Even if the traffic stop extended beyond the "reasonable length of time" necessary to address a window tint violation, the officers were justified in continuing their investigation. *Howard*, 2006-Ohio-5656, at ¶ 15-16. Officer Veeneman testified that they intended to search the vehicle for drugs irrespective of the canine's arrival, since Officer

---

4. As a collateral matter, we note a rolled marijuana cigarette was subsequently found within the vehicle. When such items are smoked, the odor of burnt marijuana would occur.

Popplewell smelled burnt marijuana. Founded upon this initial existence of probable cause, there was no design to cause unreasonable delay, nor did any occur.

{¶22} Officer Popplewell was qualified based on his training and experience to smell and identify the odor of marijuana. The prolonged detention of a stopped motorist merely requires a reasonable, articulable suspicion that criminal activity has occurred. *Batchili* at ¶ 12. The odor of marijuana created reasonable, articulable suspicion for officers to investigate further.[5] *See Moore* at paragraph one of the syllabus. Consequently, we find that the officers did not prolong the initial traffic stop, and further that the officers would have been justified in extending the duration of the initial stop if a reasonable amount of time was required to investigate the odor of marijuana detected. As the facts unfolded during the initial window tint traffic stop, matters quickly turned into an investigation involving drugs and the officers' investigation was neither intrusive nor unreasonable in duration.

## II. Exigent Circumstances/Discovery Inevitable

{¶23} Searches and seizures conducted without a warrant are per se unreasonable unless the search and seizure fall within one of the few specifically established and well delineated exceptions to the U.S. and Ohio Constitution warrant requirements. *Lynn*, 2018-Ohio-3335, at ¶ 16. "[I]n the absence of an exception to the warrant requirement, the search of defendant's person is unlawful." *Moore*, 90 Ohio St.3d at 51. When a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement. *Banks-Harvey*, 2018-Ohio-201, at ¶ 18.

{¶24} Caldwell argues that the search of his person without a warrant was not

---

5. Despite Caldwell's indication that he was registered to legally use marijuana, "[t]he amount of medical marijuana possessed by a registered patient shall not exceed a ninety-day supply." R.C. 3796.22(B); *see also* Ohio Adm.Code 3796:8-2-04 (enumerating the legal quantities of permitted forms of medical marijuana). Caldwell's production of his registry identification card does not necessarily defeat an officer's sufficient reason to believe criminal activity has occurred when considering the totality of the circumstances.

supported by any exception to the warrant requirement. The trial court, however, found that the officers had probable cause to search Caldwell's person and that the search of his person was justified by exigent circumstances. It further determined that the discovery of the drugs was inevitable.

{¶25} "[C]ertain situations present exigent circumstances that justify a warrantless search." *Moore* at 52. The exigent circumstances doctrine requires a finding of probable cause plus exigent circumstances. *State v. Wilson*, 12th Dist. Clinton CA2006-03-008, 2007-Ohio-353, ¶ 22. The finding of probable cause for exigent circumstances is based on the totality of the circumstances, and is an objective determination. *State v. Pettiford*, 12th Dist. Fayette No. CA2017-05-010, 2018-Ohio-1015, ¶ 25. One of the key purposes of the exigent circumstances exception to the warrant requirement is to "prevent the imminent destruction of evidence." *State v. Luong*, 12th Dist. Butler No. CA2011-06-101, 2012-Ohio-4519, ¶ 25, quoting *Kentucky v. King*, 563 U.S. 452, 460, 131 S.Ct. 1849 (2011). "Because marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless search may be justified to preserve evidence." *Moore* at 52.

{¶26} In this case, Officer Veeneman had probable cause to believe Caldwell had committed illegal acts based upon Officer Popplewell's detection of the odor of burnt marijuana. *Moore* at 53. Detective Flick's information that Caldwell was a person of interest in a drug trafficking investigation and the canine's alert to the presence of drugs in the vehicle immediately prior to the search also contribute to an objective finding of probable cause. Based upon the totality of these circumstances, we find that probable cause existed to search Caldwell's person. *Pettiford* at ¶ 25.

{¶27} The trial court also found that suppression would be denied due to the doctrine of inevitable discovery. We agree. As previously discussed, the officers were entitled to search Caldwell's vehicle pursuant to the automobile exception to the warrant requirement.

*Cruz*, 2014-Ohio-4280, at ¶ 18, quoting *State v. Dominguez*, 12th Dist. Preble No. CA2011-09-010, 2012-Ohio-4542, ¶ 22 ("[I]f a trained narcotics dog 'alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband.'"). When the officers conducted a search of Caldwell's vehicle, he would have been arrested pursuant to the drugs they would have found therein. His person would then have been searched incident to that arrest, and the drugs in his pocket would then have inevitably been discovered. *State v. McCullough*, 12th Dist. Fayette No. CA2013-07-021, 2014-Ohio-1696, ¶ 29.

### III. Search of the Vehicle

{¶28} The officers discovered drugs during their warrantless roadside search of Caldwell's vehicle. Caldwell argues that the automobile exception to the warrant requirement does not apply and therefore the evidence obtained from the search of his vehicle should be suppressed. This argument, however, ignores the specific facts of this case and disregards the rationale behind the automobile exception.

{¶29} Under the automobile exception to the warrant requirement, once police officers obtain probable cause to believe a vehicle contains contraband, the officers may search the vehicle. *State v. Raphael*, 12th Dist. Warren Nos. CA2014-11-138 and CA2014-11-139, 2015-Ohio-3179, ¶ 23. Probable cause to search a vehicle and its contents exists where a narcotics dog alerts to the odor of drugs from a lawfully detained vehicle. *Blatchford*, 2016-Ohio-8456, at ¶ 38.

{¶30} We agree with the trial court that the automobile exception to the warrant requirement applies in this case and justified the officers' roadside search of the vehicle. Both the canine's alert on the vehicle and Officer Popplewell's smell of burnt marijuana provided the officers with probable cause to believe the vehicle contained contraband. Consequently, the officers were permitted to search the vehicle on the roadside.

{¶31} After examining all arguments, we find that the trial court did not err in denying Caldwell's motion to suppress. Caldwell's sole assignment of error is overruled.

{¶32} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.